ELIZABETH T. CLAGUE vs. WILLIAM D. WASHBURN.

January 18, 1890.

**Rev. St. 1851—Married Woman's Deed—Consent of Husband.** — The consent of a husband to the conveyance by his wife of her separate real estate, required by Rev. St. 1851, c. 71, § 105, as amended in 1852, might be oral or in writing, express or implied.

**Same—General Consent to her Acting as a Feme Sole.** — It was not necessary that he should have known of and specially consented to her executing the particular conveyance. If she were acting generally as a *feme sole*, doing business and buying and selling property in her own name, and he knew of and consented to her so doing, that consent would extend to any particular transaction of hers under it.

**Same — Evidence — Wife's Covenant of Good Right to Convey.**—A covenant of good right to convey in a wife's deed of real estate, executed

while that statute was in force, is evidence tending to show her husband's consent to her conveyance, as it may be regarded as in the nature of a declaration or admission by her of the existence of the facts necessary to her right to convey.

**Record of Void Deed as Evidence of its Execution.**—The record of a deed of real estate, appearing on its face to have been properly executed and acknowledged, is evidence that the deed was in fact executed as it purports to have been, notwithstanding the deed, by reason of extrinsic facts, be void or voidable.

**Evidence of Husband's Consent held Sufficient.**—Evidence *held* sufficient to justify a finding that a husband consented to his wife's conveyance of real estate.

Appeal by plaintiff from an order of the district court for Hennepin county, refusing a new trial after a trial before *Hicks*, J., and verdict for defendant.

*Selden Bacon*, for appellant.

*Shaw & Cray* and *Woods & Kingman*, for respondent.

GILFILLAN, C. J. This is an action in ejectment to recover an undivided interest in real property in Hennepin county, described as lots 9 and 10, in block 10, of Sutton & Pratt's addition to Minneapolis. The plaintiff claims as one of the heirs-at-law of Frances Thornton. The defendant claims through an alleged deed of conveyance by Frances Thornton to Francis M. Thornton. It appears that at the time of executing that deed Frances Thornton was a married woman, her husband, Arthur Hill Thornton, not joining in the deed. On the trial there was a general verdict for the defendant, and also two special findings of fact, only one of which need be mentioned here, as it must control the judgment. That finding was in answer to this question put by the court: "Was the deed given by Frances Thornton to her son Francis M. Thornton, April 25, 1860, made with the consent of Arthur Hill Thornton, the husband of said Frances Thornton? Answer. Yes." If that deed was executed with such consent of the husband as the statute at that time in force required, then the plaintiff's claim of title failed, and of course she could not recover. The verdict does not specify in what manner the consent was given. It is to be taken, therefore, as a finding of such consent as the court in-

structed the jury would in law be sufficient. The instruction was as follows: "As a matter of law, that consent may have been either oral or in writing; it may have been express or implied. You may, from all the circumstances surrounding the case which may have been testified to in your hearing, determine whether or not ·he consented. The court instructs you that that consent may be inferred from acts instead of words; that is, that the course of conduct of this husband, Arthur Hill Thornton, may have been such—you are to determine whether it was—that you may infer the consent from the acts alone."

The statute in force at the time of executing the deed was Rev. St. 1851, *c.* 71, § 105, as amended in 1852, which reads as follows: "Any real or personal estate which may have been acquired by any female before her marriage, either by her own personal industry, or by inheritance, gift, grant, or devise, or to which she may at °any time after her marriage be entitled by inheritance, gift, grant, or devise, and the rents, profits, and income of any such real estate, shall be and continue the real and personal estate of such female after marriage, to the same extent as before marriage: * * * *provided*, that nothing in this section contained shall be construed to authorize any married woman to give, grant, or sell any such real or personal property during. coverture, without the consent of her husband, except by order of the district court of the county." While this statute makes the fact of the husband's consent essential to the validity of the wife's deed, it does not provide how that consent shall be given, nor how it may be proved. The plaintiff contends that the consent should be by deed, in analogy to the law that "no estate or interest in lands, * * * nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the parties creating, granting, assigning, surrendering, or declaring the same," (Rev. St. 1851, *c.* 62, § 6;) or, at least, should be in writing, and be express. Inasmuch as the mere consent of the husband to his wife's act does not create nor pass any estate, nor affect any estate or interest he may have in the land,

and her separate conveyance thereupon could only operate on her own estate or interest, such consent could hardly come within the terms of the statute last referred to. And to require that the consent should be by deed or in writing would seem to be inserting in the statute regulating conveyances by married women a provision which the legislature chose to omit. The insertion in that statute, after the words "consent of her husband," of the words "by deed" or "in writing," if that body had so intended, was so easy and obvious a mode of showing such intention that the omission of those or equivalent words is significant that it did not so intend. In the case of *Merrill* v. *Nelson*, 18 Minn, 335, (366,) the husband affixed his signature and seal to his wife's mortgage of her real estate. The court held it a sufficient consent on his part, though it was not his deed, and though the consent was not expressed in terms, but only to be implied; for the court arrived at the conclusion that he consented by this reasoning: "We are quite unable to conceive what possible purpose could be ascribed to such signature and seal, unless it be a purpose to consent, at least, to the wife's deed." The case must be taken as settling that the consent need not be by deed, and need not be expressed in terms. *Pond* v. *Carpenter*, 12 Minn. 315, (430,) was an action to charge the separate estate of the wife with a debt for goods purchased by her for her sole use and benefit, and on the credit of her separate estate. The court considered the consent of the husband to her charging her separate estate necessary, and held that such consent sufficiently appeared from an allegation in the complaint that the goods were sold to her upon the credit of her separate estate, at the instance and request of the husband. It did not appear that such instance and request was in writing. The two cases must be taken as settling that the consent need not be by deed, nor in writing, nor expressed in terms, but that it may be proved by parol, and may be gathered from the husband's acts. No other decision of the court has in any degree impaired the force of those two. They are to be regarded as a rule of property to be adhered to. They cover this case.

The court instructed the jury, referring to the deed from Frances to Francis M. Thornton: "The deed itself contains a declaration or

covenant that she, Frances Thornton, had good right to convey the land described in it, and this may be considered by you, as between Frances Thornton, her heirs, and the defendant, as evidence tending to show that she, Frances Thornton, had the consent of her husband to make said deed." There was in the deed the usual covenant of good right to convey. To this instruction the plaintiff makes several objections, which may be briefly stated thus: *First.* There was no evidence of the contents of the deed, the deed itself not being in evidence, but only the record of it; and the record was not evidence, because, being void, the deed was not entitled to be recorded, and therefore the record was of no effect either as evidence or otherwise. *Second.* The covenant was, at most, only a contract, and was not and did not include a declaration of any fact necessary to Frances Thornton's right to make the conveyance; it is directed only to a conclusion of law, and not to any of fact. *Third.* The covenant had no other or further validity than the deed itself, and, that being void, the covenant was also void.

The deed appeared upon its face to have been properly executed and acknowledged. That entitled it to be recorded. That there may be matter, not appearing upon the face of a deed, that will render it void or voidable, such as coverture, infancy, idiocy, insanity, duress, or fraud, will not affect its right to be recorded. If it would, it would be necessary for the register, before recording, to ascertain if any such condition of things existed, which, of course, could not be required nor tolerated. The record is no evidence of the validity of the deed as against any such extrinsic objection, but is evidence only that it was in fact executed and acknowledged as it purports to have been.

We have more doubt upon the second objection. Such a covenant is primarily a contract by which the covenantor binds himself as to the existence of such facts or condition of things as may be necessary in law to make the covenant good, and agrees to be answerable in case they do not exist. Treating it as a contract, he is, as between him and the covenantee, conclusively bound to the existence of such facts, so that as between them he cannot deny it when asserted by the covenantee, and it has such effect only as between them and their

privies. No one else can rely upon it as an estoppel. Treating it, if it can be so treated, as a representation, admission, or affirmation of the existence of such facts, its effect is wholly different. As such it is not conclusive, but may be rebutted, and strangers may use it as evidence against the covenantor. To make it a contract, there must be capacity to contract on the part of the covenantor; to make it evidence as a representation or admission of fact, capacity to contract is not essential, but only capacity to make an admission or representation. To illustrate this: A minor, not having legal capacity to do so, cannot ordinarily bind himself by contract, but if he be of sufficient understanding he may make an admission of fact that will be evidence (though not conclusive) against him, even as to his age. *Klason* v. *Rieger*, 22 Minn. 59; *Conrad* v. *Lane*, 26 Minn. 389, (4 N. W. Rep. 695.) One may make an admission by act as well as in words. *Chadwick* v. *Cornish*, 26 Minn. 28, (1 N. W. Rep. 55.) Thus, if one assumes to dispose of property, it is equivalent to a declaration that the property is his. *Taylor* v. *Brown*, 65 Md. 366, (4 Atl. Rep. 888.) And we think if one assumes to convey property, and to covenant that he has a right to convey, it may be taken as an admission of such right, and of the existence of such facts as are necessary to the right. In this case the consent of the husband was essential to the wife's right to convey, and her covenant that she had a right to convey (although for want of capacity it might not be binding as a contract) was evidence tending to prove the consent.

Part of what has been said upon the second objection applies to the third. The wife could make an admission or declaration of the husband's consent by acts or spoken words. To make it admissible as evidence against her, it was not necessary that such words or acts should have amounted to, or should have occurred in the making of, a valid contract. It was therefore not material to the admissibility of the deed and covenant, as an admission of fact, that the validity and binding effect of the deed and covenant as a contract was not established.

The objection is also made to the finding of fact that there was not evidence sufficient to sustain it. We have no doubt there was. It was not necessary that the husband should know of or assent to

the execution of this particular deed. If he knew of and consented to her acting generally as a *feme sole*,—to her buying and selling property generally in her own name,—such consent would extend to any particular transaction in buying or selling which she might have under it. This proposition covers a great many objections to the evidence offered at the trial. With evidence tending to prove that the husband knew of and assented to what she was doing, it was competent to show that she acted as a *feme sole*, and carried on business and bought and sold in her own name. The fact that she acted generally and bought and sold in her own name, would be some evidence, as against her, that she did so with her husband's consent. It would be, in effect, a declaration that she had right or authority so to act. But there was other evidence from which the jury might find the husband's consent to his wife's acts. In 1849 she, bringing some of the children and leaving the husband behind, left Ireland and came to this country. He appears to have consented to her coming, and himself remained behind, as the evidence indicates, at first to close some business, and afterwards because of his health. He never came. After reaching this country she remained till her death, in 1875. He died in Ireland, in 1863. While he lived their relations to each other appear to have been entirely amicable. Their living apart appears to have been without objection from either side. They frequently corresponded, and she appears to have advised him from time to time of how she and the family were getting on. From this situation the jury might infer, not perhaps that he knew specially of any particular transaction of hers, but that he knew generally what she was doing—that she was acting independently of him, and doing whatever she thought best for the interests and welfare of herself and children, and buying and selling property of herself, in her own name, if she thought advisable; and the jury might infer, there being no evidence that he ever made any objection, that he consented to her doing so.

During the trial considerable evidence was admitted, against plaintiff's objection, to the effect that Mrs. Thornton was generally reputed and understood in the neighborhood where she lived to be a widow, and several witnesses were permitted to testify that they understood

her to have been a widow. The fact that she was a married woman at the time of executing the deed to Francis M. Thornton does not appear to have been disputed. The finding of the jury under consideration necessarily assumes and includes that fact, so that the evidence referred to had no influence, so far as the question of marriage was concerned. On the question of the husband's consent, it was entirely immaterial; so clearly so, that it must be assumed that the jury were not influenced by it. Upon the direction which the trial took, the material questions were, did she generally act and do business and buy and sell in her own name as though she were sole, or as though she had her husband's consent, and did he know of and consent to it? If such were the facts, it was wholly immaterial whether people supposed her to be a widow or single, or knew her to be married. Of these material questions, the only one upon which the evidence could have any, even the remotest, bearing, and upon which we may suppose the jury could have considered it, was the question, did she generally act and do business, and buy and sell, in her own name, as though she were sole, or as though she had her husband's consent? On this question the evidence was such that the jury could not have found otherwise than that she did; so that the evidence, even though objectionable, did not prejudice.

Order affirmed.