Zoe Roussain *et al. vs.* James W. Norton *et al.*

Argued June 14, 1893.    Affirmed June 27, 1893.

**Venue to a Certificate of Acknowledgment of Execution of Instrument.**

Where an officer has authority to take acknowledgments anywhere in the state, the addition, in the venue to the certificate, of a wrong county, or where there is no such county, will not affect its validity.

**Effect of Record of Deed not Impaired by the Time of the Acknowledgment.**

Where a deed and the acknowledgment are regular on their face, it will not impair the effect of the record that the acknowledgment was in fact

taken before the deed was complete, as where the name of the grantee, or description of the premises, had not been inserted.

**Name on Tax List not Notice of Adverse Claim.**

One purchasing real estate from one appearing to be the owner, by the records in the register's office, is not chargeable with notice that it is assessed for taxation to another person.

**Evidence of Value.**

On the question of the market or selling value of the land, the opinion of a geological expert, not published or known so as to affect people's estimate of the value, that there is valuable stone beneath the surface, is not admissible.

**Possession as Notice of Unrecorded Title.**

Possession of land, in order to be notice of the possessor's rights to one who buys from the apparent record owner, must be a present possession. A former possession, which has ceased, though there be still evidence of it on the land, will not suffice. And where the possession is not shown by residence on the land it must be shown by acts of dominion over it, such as indicate, not mere casual entries, but a continued claim of right.

**Findings Supported by the Evidence.**

Certain findings of fact *held* justified by the evidence.

**Graves and Gravestones as Notice of Occupation.**

And certain facts and appearances on the land, including the presence of graves,—some with gravestones bearing the names of those buried,—considered, and *held* not to be indicative of the present continued exercise of dominion over the land, so as to be notice to a purchaser from the record owner that some other person claims it.

Appeal by plaintiffs, Zoe Roussain and Francois Roussain, Jr., from an order of the District Court of St. Louis County, *D. B. Searle,* J., made December 24, 1892, denying their motion for a new trial.

The plaintiffs are the heirs at law of Francois Roussain, Sr., who died intestate June 3, 1885, seised in fee of the northwest quarter of section six, (6,) T. 48, R. 15, in St. Louis County. He received patents for the land in 1860. He and wife deeded it in 1867, to D. Geo. Morrison of Superior, Wis., as security for money borrowed. In 1872, Morrison and wife reconveyed the land to Francois Roussain, Sr., but the deed was not recorded until March 26, 1890. Meantime Morrison and wife had deeded the land to John P. Johnson, and he and wife to Persis T. Norton and John F. Patten, under the circumstances stated in the opinion. Patten afterwards sold and conveyed his interest to Charles E. Dickerman and Sumner W. Matteson.

v.53M.—36

They conveyed to E. L. Emery, and he gave them a mortgage on the land for a part of the purchase price.

When Johnson purchased the land, its value was trifling. Shortly after, it acquired a speculative value, owing to the discovery of brown sandstone, and to rumors that the Dalles of the St. Louis were to be improved and utilized for manufacturing purposes. When Norton and Patten purchased, there were about thirty graves on the southeast corner of the land, some of them very old, some provided with gravestones with inscriptions on them.

The defendants in this action were Persis T. Norton and James W. Norton, her husband, E. L. Emery, Charles E. Dickerman, and Sumner W. Matteson. The object of the action was to establish the plaintiffs' title, and obtain a decree that the defendants were not purchasers in good faith, but were chargeable with notice and knowledge, sufficient to put them upon inquiry, as to the rights of Francois Roussain, Sr., and his heirs. A former appeal is reported. 46 Minn. 308.

*H. S. Lord, M. B. Webber,* and *John H. Norton,* for appellants.

*White, Reynolds & Schmidt* and *Warner, Richardson & Lawrence,* for respondents.

GILFILLAN, C. J. This is an action under the statute to determine adverse claims to real estate, brought by the widow and heirs of Francois Roussain, Sr., deceased.

In 1860 the land in controversy, consisting of one tract of 168 acres, was conveyed to him by United States patents duly recorded in the register's office in the county (St. Louis) in 1863. January 10, 1867, he, by deed absolute in form, but intended as security, and so a mortgage, and duly recorded January 14, 1867, conveyed the land, in terms, to one Morrison. April 15, 1872, Morrison reconveyed the land to Roussain by deed not recorded till March 26, 1890. So that from January 14, 1867, till the conveyance to Johnson, hereafter mentioned, Morrison appeared by the record to be the absolute owner. Roussain died in June, 1885.

In January, 1887, Morrison, by deed (the peculiarities in the execution and acknowledgment of which will be hereafter referred to) duly recorded January 28, 1887, conveyed the land to one Johnson, subject to taxes, and a certain tax sale. The consideration expressed

in the deed was $200, and the amount required to redeem from the tax sale, and pay off the taxes then on the land, was $181.49.

The court below finds, as facts, that Johnson purchased in good faith, and without notice or knowledge of the unrecorded deed of April 15, 1872, or that the deed of January 10, 1867, was intended to operate otherwise than according to its terms, or that after January 10, 1867, Roussain or the plaintiffs had or claimed any interest in the land; and there are similar findings in respect to those who purchased from Johnson, and those who purchased from them. In respect to Johnson there is, in the evidence, strong suggestion to the contrary of the finding. But as a purchaser in good faith from a purchaser in bad faith will be protected, under the registry laws, it is immaterial whether the finding in respect to Johnson is sustained by the evidence, if it be sustained in respect to the purchaser from him.

February 17, 1887, Johnson conveyed to Norton and Patten by deed duly recorded March 9, 1887, and the other defendants claim through those grantees.

The circumstances referred to in respect to the execution and acknowledgment of Morrison's deed to Johnson were that Morrison filled a blank form of deed, leaving, however, blanks for the grantee's name, and the description of the property; and in that condition he and his wife signed and sealed it in the presence of two subscribing witnesses, and then, at Superior, in the state of Wisconsin, acknowledged the same before a notary public of that state. The venue to the notary's certificate was, "State of Wisconsin, county of St. Louis —ss.," there being then no such county in Wisconsin. But according to the statute in that state, as construed by a decision of the supreme court,—both being properly proved as facts,—a notary public in that state may take an acknowledgment anywhere within the state. The purpose of the venue to an official certificate is to show that the official act is done within the territorial jurisdiction of the officer. Any more in the venue than is necessary for that purpose is surplusage, and may be disregarded. This notary's jurisdiction extending over the whole state, the name of the state was all that was necessary in the venue. The addition of surplusage, whether untrue or not, did not affect it. Morrison then took the deed, with said blanks in it, to Duluth, where Johnson filled the blanks, and it

was then delivered by Morrison to him.    The deed was thus an effectual deed, as to Morrison.    The acknowledgment was improperly taken, because, when taken, the instrument was, by reason of the blanks, of no force.    That, however, did not affect the record of it. When an acknowledgment appears to have been taken, within his jurisdiction, by the proper officer, and there is nothing on the face of the deed or certificate of acknowledgment showing either to be void, the record will have the same effect as if both are entirely regular; that is, no extrinsic fact will impair the record.    *Clague* v. *Washburn*, 42 Minn. 371, (44 N. W. Rep. 130;) *Bank of Benson* v. *Hove*, 45 Minn. 40, (47 N. W. Rep. 449.)

Morrison and his wife would, under the decision in *Pence* v. *Arbuckle*, 22 Minn. 417, be estopped, in favor of *bona fide* purchasers from Johnson, to allege that either the deed or the acknowledgment, by reason of its having been prematurely taken, was invalid; and if the grantor's record title pass by his deed it does not matter, either as to him or any one else, how its execution is established,—whether by estoppel, or by actual proof of the facts constituting a proper execution.    To show that Morrison's record title passed by his deed it was proper, as against any one claiming that title, to prove its execution by such facts as would estop Morrison to deny it.

There was nothing on the face of the record to put any purchaser from Johnson upon inquiry, beyond the record, as to his title.    The erroneous insertion in the venue to the notary's certificate of the words, "County of St. Louis," would not suggest a doubt as to Morrison's title, nor anything except that the notary inserted them through inadvertence.

The fact that notwithstanding the title appeared, by the records in the register's office, to be in Morrison, the lands were assessed for taxation in the name of Roussain as owner, and that he paid the taxes for one of the years, (1881,) was not constructive notice to a proposed purchaser of the Morrison record title that Roussain had any interest in the land.    The books in the county auditor's office are not kept for a record of titles to real estate, and no one examining titles, or proposing to purchase, is required or expected to examine them to ascertain who is the owner, nor who has paid the taxes, nor for any purpose except that of which they are evidence, to wit, that there are or are not at the time taxes due on the land.

Norton and Patten having testified—and that evidence was proper —that they had no actual notice that at the time of their purchase any one but Johnson made any claim to the land, and the court having so found, there being no evidence to the contrary on that point, the plaintiffs' case must rest on constructive notice to those purchasers; and the question of constructive notice is brought down to the one whether the plaintiffs were in possession, so that the law made it the duty of purchasers from Johnson to know of such possession, and, in the exercise of good faith, to inquire as to the right under which such possession was had.

But before taking up the question of possession we will refer to a claim of appellants, that the consideration stated in the deed from Morrison to Johnson was suggestive of some defects in the former's title, so as to make it the duty of the purchasers from Johnson to inquire beyond what the record showed as to the title of the former. The purchase by Norton and Patten followed so closely in time upon the conveyance by Morrison to Johnson that it may be assumed they knew the value of the land at the time of that conveyance; and, if the consideration were so grossly disproportionate to the value as to suggest that the inadequacy of consideration was because there was something wrong with the title, good faith might have required of the purchasers from Johnson to inquire what, if any, were the defects in Morrison's title. But the court below found, in effect, that the consideration was not disproportionate to their value, and that finding is justified by the evidence. And, as to the evidence of value, the opinion of a geological expert, not published or known so as to enter into people's estimate of value, that there was brownstone under the surface, could not be supposed to affect the market or selling value of the land, and the court below properly excluded such an opinion.

On the question of good faith on the part of Norton and Patten, it is of no consequence that prior to making their purchase they did not go to the land, unless by going they could have ascertained that some one was in possession. To charge a purchaser with notice of the rights of others than his grantor by the mere fact of possession, the possession must be a present one. A former possession, which has ceased, will not suffice, although there be evidence of its having existed still apparent on the land. The question in such case is

not what was the condition as to possession, or the indication of possession, years before, but what was such condition and indication at the time of the purchase or during the negotiations ending in it. In this case there was no one resident on the land. Nor is that necessary where, in lieu thereof, the party claiming an interest in the land is exercising acts of dominion over it, such as leaves on the land indications of not mere casual entries, but a continued claim of right to it. The facts found by the court below as to the possession—and the evidence sustains the finding—are stated as follows:

"(22) That there then were grouped together upon a small patch of said land, near the southeast corner thereof, about thirty graves, some of which were very old, and others less so, and some of said graves were provided with gravestones, with inscriptions on them indicating that some of the persons buried there had borne the name of Roussain, and others the name of Durfee, and most of them other names, and one of them indicated that the body of said Francois Roussain, Sr., had been, as it was, buried there. Said patch of land was unfenced, but some of said graves were separately inclosed.

"(23) Said land then had the general appearance of having been once partially improved, (as it had been by said Francois Roussain at or about the dates of said patents,) and then permanently abandoned a great many years anterior to A. D. 1887.

"There was then an old clearing in the timber on said land, of about four acres in extent, through which clearing extended an old, unfenced, and abandoned road, which in former days had been the road from said village of Fond du Lac to Thomson. Said clearing was then largely grown up with brush, and here and there between the clumps of brush was sod, on which grew tame grass. Near the south side of said old road, within said clearing, there were the remains of a few fruit trees, the bodies of which were dead and broken down, with sprouts from the roots; and, about the spot where these trees were, there then were the remains of what once had been a pole fence, which then was rotten and broken down.

"Said graves were not within said clearing, but near the side of said road, and a little east of said clearing, in an opening in said timber near the southeasterly corner of said land.

"There was not then, and had not been for more than twenty years, any building on said land; but there was once a house thereon,

which had been burned,—just when, did not appear in the evidence.

"Said land was then uninclosed, and there was nothing to indicate that it ever had been fenced in any manner, and in point of fact it never had been fenced or inclosed in any way. Said land was located in what had been a heavily-timbered region, covered with dense undergrowth."

In this recital of facts everything indicates that there was no present possession, no continued exercise of acts of dominion over the land,—such, for instance, as annual cultivation, or a use of it for a wood lot, or any such purpose. In considering the question of continuing exercise of dominion indicating a present claim, the mind could pause on none of these facts, unless those relating to the presence of the graves. That one may make a continued assertion of right to a tract of land, so as to put a purchaser from another upon inquiry as to his right, by devoting a part of it to, and maintaining it as, a private burial ground for his family, relatives, and friends, must be conceded. It is true the dead are incapable of possessing the land. It is the act of the living in burying their dead on the land which constitutes exercise of dominion over, and the assertion of claim of right to, it. But according to the fact, as found, these graves did not present the appearance of the spot being maintained as a private or family burial ground by any person, so as to indicate the exercise of exclusive dominion over the land by any one. On the contrary, the number of the graves, the gravestones,—some bearing the name of Roussain, others of Durfee, and most of them other names,—suggest only that this secluded spot in the wilderness was used for burying their dead, generally and in common, by the people of the sparsely-settled neighborhood. The conclusion from the number of, and names over, the graves, that it was a common, and not an exclusive or private, burial ground, would be strengthened by the neglected and abandoned appearance of the entire tract; that the spot was not inclosed, and, so far as found, or the evidence shows, was not cared for by any one.

It is impossible to hold that under the circumstances the presence and appearance of those graves was notice of plaintiffs' right to a purchaser of the record title.

Of the claim that the Roussain possession ripened into title by adverse possession, as against the apparent record title, while we

do not see how such a title could deprive a purchaser of such record title, without notice of the title by adverse possession, of the protection afforded by the registry laws, it is enough to say that the facts as to the character and time of possession by Roussain and the plaintiffs do not show title by adverse possession.

It would be both tedious and unprofitable to allude in detail to the many assignments of error. All that deserve attention are, in general terms, covered by this opinion.

Order and judgment affirmed.

(Opinion published 55 N. W. Rep. 747.)

Motion for new trial denied July 11, 1893.