# O'Neal, *et al. v.* Prestwood, *et al.*

## *Bill to Quiet Title.*

(Decided Dec. 19, 1907. 45 South. 251.)

1. *Vendor and Purchaser; Bona Fide Purchaser; Quit Claim Deed.* —The grantee in a quit claim deed gets only such title as his grantor has, encumbered with every equity to which the grantor's interest is subject, and is not entitled to protection as a bona fide purchaser.

2. *Fraudulent Conveyances; Voluntary Grantee; Quit Claim Deed.* —Land belonging to W. was sold at an execution sale, and purchased by another to whom W. paid the requisite purchase money and caused a quit claim thereto to be executed to J., who in turn quit claimed to N. The day before the quit claim deed was executed to J., C. recovered a judgment against W. Held, N. took no title as against a purchaser under C.'s judgment, as J. was a voluntary grantee and N. took subject to the equities.

3. *Deeds; Recording; Evidence; Sufficiency.*—The evidence in this case examined and held to show that the deeds were not recorded or filed for record, in view of the conditions of the record.

4. *Vendor and Purchaser; Bona Fide Purchaser; Character of Possession as Constructive Notice.*—To constitute constructive notice to a purchaser the possession of real estate must be open, notorious and exclusive. Joint occupancy with the vendor is not sufficient.

[O'Neal, et al. v. Prestwood, et al.]

5. *Same; Time of Possession.*—The doctrine of constructive notice will not be extended to and visited upon the purchaser because he may have known of another's possession at a period distant in time before his contract, where the possession of real estate was vacant at the time of the contract.

APPEAL from Covington Chancery Court.

Heard before Hon. W. L. Parks.

Six actions by John W. Prestwood and by Emma Tompkins against C. R. O'Neal and others, and by John W. Prestwood and others and by Emma Tompkins and others against C. R. O'Neal and against Covington county. From judgments for plaintiffs, defendants appeal. Reversed, and judgment rendered in favor of Covington county.

POWELL, ALBRITTON & ALBRITTON, and B. H. LEWIS, for appellant O'Neal. A. L. RANKIN, for appellant Covington County. Under the evidence the complainant was neither in the actual nor constructive possession of the land, and hence, the bill will not lie.—Secs. 809-810, Code 1896; 124 Ala. 261; 144 Ala. 408. There was actual fraud against the creditors at the time of the execution of the deed by Watson to his daughter Mrs. Tompkins.—Secs. 2150-2156, Code 1896; *Dixon v. McLarney,* 97 Ala. 383; *Seales v. Robinson,* 75 Ala. 364; *McGhee v. Banks,* 93 Ala. 196; *Smith v. Collins,* 94 Ala. 396; *Wooten v. Steele,* 109 Ala. 563; *McLaren v. Anderson,* 109 Ala. 571. Covington county was the judgment creditor of Ezekiel Watson and a bona fide purchaser for value without notice.—Secs. 1005-1006, Code 1896; 119 Ala. 214; 131 Ala. 559. The deed from Thompkins to Prestwood was champertous and void.

FOSTER, SAMFORD & PRESTWOOD, for appellee. In this case constructive possession resulting from legal ownership is sufficient.—17 A. & E. Ency. P. & P., 312-317;

[O'Neal, et al. v. Prestwood, et al.]

*Friedman v. Chamblin,* 117 Ala. 458.  The test of peaceable possession is whether defendant interfered by an act sueable at law.—17 Ency. P. & P. 318.    Constructive possession is the possession which the law annexes to the legal title or ownership of property where there is a right to the immediate possession of such property but no actual possession.—*Fover v. Barr,* 39 South. 578; *South v. Hall,* 41 South. 135.  All parties trace title to the common source.  All the requirements for the introduction of evidence of the contents of the deed were complied with.—*Potts v. Coleman,* 86 Ala. 101.   The respondents and cross complainants had notice of the existence of the deed from Watson to his daughter.— *Brunson v. Brooks,* 68 Ala. 262; *King v. Paulk,* 85 Ala. 188; *Tutwiler r. Montgomery,* 73 Ala. 270; *Moore v. Clay,* 7 Ala. 742; *Daniels v. Davidson,* 16 Veasey 352; *Jackson v. Roe,* 4 Russell 514; *Strickland v. Nance,* 19 Ala. 233.   O'Neal cannot claim to be an innocent purchaser.—*Clemmons v. Cox,* 116 Ala. 567; *Webb v. Eleyton Land Co.,* 105 Ala. 471.   Covington county was not a bona fide purchaser, nor did it as judgment creditor make out a prima facie case of title to the land sold under execution.—*Elliott v. Dyke,* 78 Ala. 154; *Powell v. Allred,* 11 Ala. 318.   Possession under the unregistered deed is sufficient constructive notice to satisfy the statute.—*Scroggins v. McDougald,* 8 Ala. 381.   There was no fraud in the execution of the deed from Watson to his daughter.—*Carter r. Smith,* 38 South. 1084; *Clafflin v. Moses,* 30 N. J. E. 211; *Eleton v. Iron,* 109 Ala. 606.

McCLELLAN, J.—Emma Tompkins and John W. Prestwood, the latter of whom derived his rights, if at all, from the former, filed the original bills, under section 809 et seq. of the Code of 1896, against the county

of Covington and C. R. O'Neal. These respondents make their answers cross-bills, and conclude with appropriate prayers for the quieting of their respectively asserted titles. There is no insistence here for or against the legality of the admission of any of the testimony introduced. The premises involved are an uninclosed lot, in the nature of a common, in the outskirts of Andalusia, which, on the record, was in the actual possession of no one. The issue, then, as respects the possession at the time the bills were filed, is one of title, which draws to it the constructive possession of the real estate in question. In other words, title is the inquiry which, when determined, will cast the cause.

All the parties undertake to trace their titles to Ezekiel Watson, the father of Emma Tompkins. He is conceded to have owned and been in the occupancy of the lot in controversy prior to the execution of the alleged conveyance to the daughter, and to which we will refer. Mrs. Tompkins rests her claim to the title to the premises upon a voluntary conveyance executed and delivered about the year 1884 by her father to her. We think, under the testimony before us, that there can be no doubt of the execution and delivery of this conveyance, and, unless otherwise ineffectual, it invested her with the title to the lot. The contentions of O'Neal and Covington county, respondents and cross-complainants, will be stated as they assail the validity of the conveyance from Watson to his daughter. Watson was a surety upon a defaulting tax collector's bond, and under an execution issued on the judgment rendered against Watson and others the lot in question was sold and bought in by the county on the fourth Monday in October, 1897, and on October 25, 1897, a sheriff's deed was executed to the county. The action was instituted on September 1, 1896, and the judgment was rendered on May 20 1897. The

county insists that the conveyance to Mrs. Tompkins is null and void as against it, a subsequent creditor of Watson, because of fraud attending its execution and delivery, and also that, if valid, it cannot operate to prejudice the rights of the county, because it was and is an innocent purchaser, for value, and without notice, of the lot described in Tompkins' deed of gift from her father.  In reply to these grounds of attack, Mrs. Tompkins asserts that, after the execution and delivery of the conveyance by her father, she took possession of the lot, and both she and her father generally declared her ownership and possession of it; and, further, that if the father was, at the time the voluntary conveyance was made to her, then indebted, and while as to such debts the deed of gift was constructively fraudulent, yet there being no evidence of actual fraud, no right of the county, as a subsequent creditor, was or is impaired thereby; and, further, that the conveyance was properly filed for record, and that the possession by her of the premises was sufficient to put the county on inquiry as to who was repository of the legal title, which, if pursued, would have diccovered her ownership of the land.

O'Neal predicates his rights upon this state of facts, as shown by the record: Lewis purchased the lot at a sale under an execution running against Watson, and he, on May 21, 1897, the day after the judgment in favor of the county was rendered, paid the requisite sum and purposely had the quitclaim deed from the purchaser made to Morgan D. Jones, as the gratuitous repository of the title relinquished, and, in turn, O'Neal became the grantee in a quitclaim deed from Jones, and under this instrument he asserts rights in the premises. We may here dispose of his claims.  The grantee in a quitclaim deed takes no defined estate in lands, but only such title as his grantor has, incumbered with every

equity to which his grantor's interest is subject. Hence such grantee cannot be a bona fide purchaser, within the protection of that class.—*Smith v. Perry,* 56 Ala. 266, among many others. It affirmatively appears from the testimony that Jones became the gratuitous grantee in the quitclaim from Lewis at the instance of Watson, who thus evinced his purpose thereby to be to hinder, delay, or defraud the county of Covington in the enforcement of its demand against him (Watson). It is evident that O'Neal took no right, title, or interest in the lot against Covington county. The contest is alone between the county and Mrs. Tompkins and Prestwood, her grantee.

A careful consideration of all the testimony bearing on the issue convinces us that the conveyance to Mrs. Tompkins was not recorded, or filed for record, in the probate office of Covington county. It is true that the statute (section 987, Code 1896) makes the delivery of conveyance to the proper officer operative as a record of it. The judicial construction of this statute has done no more than reiterate its plain terms. Of course, here it may possibly be that the instrument in question was filed for record, and not in fact recorded, although the certificate of the official so attested. We must presume, however, in the weighing of countervailing and supporting evidence, that if the instrument was filed for record the officer did his duty and actually transcribed the instrument in an appropriate book of record. The testimony for complainant is equivocal at best, and amounts to little more than assertion of the presence of the formal certificate of recordation on the back of the instrument. But the tendency of this evidence is entirely neutralized and overcome by the practically conceded fact that no record of the conveyance can be found in the probate office. The fire of 1895, whereby the court-house

was destroyed, cannot suffice, under the evidence in the cause, to account for the absence of the record of the deed. It is shown, and that without serious conflict, that the deed from Watson to Mrs. Stanley, Mrs. Tompkins' sister, executed before that to the latter, is of record; that the only book in which deeds were recorded prior to 1884 destroyed was full, and incapable of containing other instruments, and that record books continuously used for recording subsequent to 1882 or 1883 are accessible; and, as not the least influential fact, the transcript details a heated controversy between Watson and an officer with leviable papers, in which the point was whether Mrs. Tompkins had a deed to this lot and the umpire was the deed, to get which they left the courthouse, and which the officer testifies did not, to his best recollection, bear the certificate that it had been filed for record. We have touched upon the main facts inducing our conclusion that the deed was not recorded.

Mrs. Tompkins' insistence that the county had constructive notice of her claims to the property, sufficient to raise the duty, before parting with its substance for the lot, to institute inquiry of her relation to the land, cannot be entertained. The character of possession of real estate essential to operate as constructive notice to a purchaser thereof has been fully discussed in the case of *McCarthy v. Nicrosi*, 72 Ala. 332, 47 Am. Rep. 418, among others. Such possession must be open, notorious, and exclusive as regards the vendor. A joint occupancy with the vendor will not avail, for in that event the possession would be at most equivocal. But, additional to this character of possession, the time of its existence is also important as affecting the rights of an alleged bona fide purchaser from the vendor. In 2 Pom. Eq. Jur. § 662, it is stated: "In order that any kind of possession,

29 R

whether actual or visible, or simply constructive, or con-
sisting in the rightful receipt of rents and profits, may
put a purchaser upon an inquiry and operate as con-
structive notice, it must exist at the time of the transac-
tion by which his rights and interests are created. A
possession which had ended before  *  *  *  the sale
to him was made or the conveyance or incumbrance was
executed could not effect him with any constructive no-
tice." If we assume that Mrs. Tompkins, through ten-
ants or otherwise, up to the year 1889, has possession of
the lot, and that Watson was not jointly with her exer-
cising acts of ownership—an assumption really refuted
by the testimony adduced in this cause—such status
would not operate to charge the county as the purchaser
in October, 1897, eight years afterwards, with the duty
to inquire what her rights were at that time. Time near-
ly sufficient to create a bar by prescription had elapsed.
The land had been vacant for years before the purchase
by the county, and Watson had repeatedly and in the
most solemn manner asserted his ownership of the prem-
ises and asserted the dominion of it as far as that state
would permit. In *Boggs v. Varner*, 6 Watts & S. (Pa.)
474, the Pennsylvania court, writing to the point before
us, says: "*  *  *  For, if the possession is vacant, it
supersedes the necessity of further inquiry; for no case
has been ruled which extends the doctrine of construct-
ive notice so far as to visit him with all the consequen-
ces of notice, because he may have known a person to
have been in possession at any distant period of time
before his contract. The law is not so unreasonable.
*  *  *" To the like effect is *Meehan v. Williams*, 48
Pa. 238; *Roussain v. Norton*, 53 Minn. 560, 55 N. W.
747. The same principle is recognized in *Scotch Lum-
ber Co. v. Sage*, 132 Ala. 598, 32 South. 607, 90 Am. St.
Rep. 932.

[O'Neal, et al. v. Prestwood, et al.]

Application of this established rule to the case in hand must result in the conclusion that the anterior actual or constructive possession of Mrs. Tompkins, years before the sale to the county, imputed no notice of any kind to the county erecting the duty of inquiry in the premises. For the same reason, pretermitting others occurring, the fact that at that remote period the rent note was taken in the name of Mrs. Tompkins was without effect as constructive notice of her ownership. Hence we hold the county of Covington to have been an innocent purchaser, for value, and without notice, of the lot described in the bill. In this view it is unnecessary to pass upon the question of fraud vel non in the execution of the Tompkins deed.

The decrees appealed from are therefore reversed; and in each cause one will be here rendered vindicating the title of the county of Covington against the original complainants and C. R. O'Neal to the lot described in the bill, except as to that part conveyed by it to the Louisville & Nashville Railroad Company, and canceling the conveyances of Jones to O'Neal and Tompkins to Prestwood.

Reversed and rendered.

TYSON, C. J., and DOWDELL and ANDERSON, JJ., concur.