# Heflin *v.* Bingham.

### *Statutory Real Action in Nature of Ejectment.*

1. *What title will defeat recovery.*—In ejectment, or a statutory action in the nature of ejectment, if the plaintiff makes out a *prima facie* case for recovery, the defendant can only defeat the action by showing a paramount legal title or right to the possession.

2. *Reservation of growing trees in conveyance.*—When a conveyance of land contains an express reservation and exception of the growing trees of suitable

[Heflin v. Bingham.]

size and quality to be sawed into lumber, the title to the trees does not pass to the grantee, but remains in the grantor, and with it the right to enter on the land, to cut and remove them, doing no unnecessary damage; which right he may sell to another, or grant to another a verbal license to exercise it.

3. *Sale of growing trees.* — Growing trees are a part of the realty, and a verbal sale of them does not pass the title; yet such verbal contract, accompanied with the payment of the agreed price, and the delivery of such possession as the nature of the case admits of, confers on the purchaser the right to enter on the land, and to cut and remove the trees, doing no unnecessary damage; but it confers no right to erect or occupy any buildings or structures thereon.

4. *Same; time for cutting and removal, and how determined.* — If no time is specified in the contract, within which the trees are to be cut and removed, it must be done within a reasonable time; and this is generally a question of fact, dependent on the circumstances of each particular case; in the determination of which, regard must be had to the known use for which the timber was wanted, and the custom and rule, if any, of felling and removing the timber, according to the capacity of the mill; and though a reasonable time should be allowed for rebuilding the mill, in the event of its destruction, undue delay in rebuilding it should not be allowed, nor the accident of a falling market be taken into the estimate.

5. *Same; forfeiture of right of entry; damages for trespass.* — The right to enter on land, for the purpose of cutting and removing the trees, under such parol contract, is forfeited and lost by the failure to exercise it within a reasonable time; and when so forfeited, an entry under it renders the person liable as a trespasser; but, in an action for such trespass, the value of the trees constitutes no part of the damages.

6. *Plea justifying under special right of entry.* — In an action to recover the possession of land, a plea justifying the defendant's entry under a purchase of the growing trees, or a parol license to enter for the purpose of cutting and removing them, should aver that he began the work within a reasonable time, and was prosecuting it with all due diligence.

APPEAL from the Circuit Court of Talladega.

Tried before the Hon. JOHN HENDERSON.

This action was brought by John T. Heflin, against Henry C. Bingham and Samuel R. Bingham, to recover the possession of a tract of land, which was described in the complaint as "the east half of the south-west quarter, and the south-east quarter of section thirteen (13), township eighteen (18), range five (5), east, in the Coosa land district," with damages for its detention; and was commenced on the 4th February, 1876. The plaintiff claimed the lands under a deed executed to him by Thomas A. Cook and wife, which was dated the 21st March, 1873, conveyed the said lands in consideration of the payment of $1,400, and contained a reservation, or stipulation, in these words: "This conveyance is made with the following reservation and exception, as to the part of said lands hereinafter specified, which is as follows: the pine trees of proper size and suitable quality to be sawed into lumber, that are now growing and standing on one hundred acres of said land, are excepted and reserved from this conveyance. The one hundred acres, on which said pine trees of proper size and suitable quality for lumber are reserved, are as follows: the south-east quarter of the south-

west quarter, the north-east quarter of the south-west quarter, section thirteen (13), township eighteen (18), range five (5), and twenty acres on the western side of the south-east quarter of said section; which said twenty acres are bounded as follows; commencing at the south-west corner of the south-east quarter of said section, and running thence east; with the southern boundary of said section, one hundred and ten yards; thence north, parallel with the western boundary of said quarter-section, to the northern boundary of said quarter-section; thence west, with the northern boundary of said quarter-section, one hundred and ten yards, to the north-western corner of said quarter-section; and thence south, with the western boundary of said quarter-section, to the beginning point." This conveyance was properly executed, proved, and recorded.

The defendants disclaimed possession of the lands sued for, except as to that portion which is described in the reservation contained in the said deed; and as to that portion they pleaded not guilty, "in short by consent," and a special plea, which was in these words: "And for further answer to plaintiff's complaint, defendants say, in short by consent, that before the commencement of this suit, and before the plaintiff's right of possession accrued, to-wit, on or about the month of June, or July, 1871, Thomas A. Cook, who was then seized and possessed of the lands of which these defendants are now in possession (which said lands are the east half of the south-west quarter, and twenty acres off the western side of the south-east quarter, all in section thirteen (13), township eighteen (18), range five (5), east, in Coosa land district), then and there granted and sold to these defendants, for a valuable consideration then and there paid to him by these defendants, the right and privilege of cutting all the pine trees then growing or standing on said land, that were of proper size and suitable quality to be sawed into lumber, together with the right and privilege of entering on said land for the purpose of cutting and removing said pine trees; and that these defendants were then and there, pursuant to said grant, placed in possession of said lands by said Cook, and have since remained in possession of said land, in the exercise of the rights and privileges thus granted, and engaged in cutting said pine trees, using proper care and due diligence in removing the same."

The plaintiff demurred to this special plea, assigning the following grounds of demurrer: 1st, "because the legal title to land is the only question that can be tried in this action, and the facts stated constitute no defense to the action;" 2d, "because there is no averment of the facts which consti-

[Heflin v. Bingham.]

tute the alleged due diligence used by said defendants ;" 3d,
"because the law says, no time being fixed by said contract
within which the trees were to be cut, that it must be done
within a reasonable time, and said plea does not state any
facts by which the court can determine whether a reasonable
time had elapsed when this suit was begun ;" 4th, "because
the plea did not allege the number of trees to be cut, the
means employed to remove them, and the continuous use of
those means." The court overruled the demurrer, and the
plaintiff then took issue on said special plea.

"On the trial," as the bill of exceptions states, the plain-
tiff read in evidence his deed from said Cook, "and intro-
duced evidence tending to show that, at the date of said
deed, said Cook was in possession of the lands sued for, ex-
cept the portion embraced in the defendants' disclaimer;
that, as to the lands therein described, the defendants were
in the possession of the same, for the purpose of cutting and
sawing the pine trees that were of proper size and suitable
quality to be sawed into lumber, growing or standing thereon,
but, for all other purposes, that said Cook was in possession
of said land ; and that said defendants were at the com-
mencement of this suit, and still are, in possession of the
lands described in said disclaimer, for the purpose of cutting
and sawing into lumber the said pine trees of suitable size
and quality ; that the lands are timber lands, uninclosed, and
lying about two miles and a half north-east of Talladega;
that the defendants, before the sale of the lands by said Cook
to plaintiff, had dug a well on said hundred acres, and had
placed thereon a portable steam saw-mill, and were using the
land for a mill-yard for lumber and saw-logs ; that they had
erected, before that time, a stable for cattle and stock used
in hauling stocks and lumber, and for keeping fodder, &c. for
the oxen ; that defendants' mill had been burned down at the
time of the sale by Cook to said plaintiff, but the wreck of
the mill and the stable were still standing on the land. The
lands being unimproved, plaintiff did not offer any evidence
as to the yearly value, or rent ; and plaintiff rested.

" The defendants then introduced said Thomas A. Cook as
a witness, who testified as follows : (1.) Some time in the
early part of the year 1871, said Henry C. Bingham and wit-
ness had a conversation, in which witness proposed to sell
him the two hundred and forty acres of land described in the
plaintiff's complaint, at eight dollars per acre. (2.) Said Bing-
ham declined to purchase the land, saying that he had no
use for it, but that he would buy the timber on it; and wit-
ness then verbally agreed to sell him the timber on said land,
at five dollars per acre, which said Bingham agreed to give ;

[Heflin v. Bingham.]

but no money was paid, nor written contract signed. (3.) In this conversation, Bingham informed witness that it was defendants' intention to purchase machinery and erect a saw-mill and machinery for making sash, doors, and blinds, on lands which they had lately purchased from J. C. Knox, lying about a mile and a half from the lands in question. (4.) At the time of said conversation, witness understood that said defendants wanted the timber on his said lands for the purposes of their said mill and factory. (5.) Soon after this, said Bingham went to Cincinnati, to purchase machinery, without completing said agreement for the purchase of said timber. (6.) About June, or July, 1871, after said Bingham had returned, and was engaged in erecting his said mill and factory on the Knox land, witness came to the factory where he was at work ; and said Bingham then informed witness, that, having spent more money than he had expected in the purchase of machinery, it would be impossible for him to carry out said agreement for the purchase of the timber on said land, but that he would take the timber on one hundred acres, at the price named. (7.) Witness assented to this proposition ; whereupon said Bingham paid him five hundred dollars in cash, it being five dollars per acre ; and two witnesses being called up, witness told them, that he wanted them to witness the fact, that said Bingham had paid him five hundred dollars for the timber on one hundred acres of land ; and then, turning to said Bingham, witness said, ' There are your trees, go and take them when you want them ; ' but said contract was never reduced to writing. (8.) This was all that was said or done at the time, either by witness or by Bingham : nothing was said, one way or the other, about putting up a steam saw-mill on the land, or a stable, or other fixtures, or about digging a well on the land, or when the trees were to be taken away. (9.) Witness had owned said land, and known it since 1849 ; and in 1872, at what time he could not remember, he saw Bingham digging a well for a steam saw-mill within a few steps of the line of said land, and warned him to be careful, as he was digging his well on the land of one McAfee, which joined said hundred acres on the west. (10.) Witness afterwards went on the land, and found that Bingham had put his portable mill on said land, and had erected stables for stock, and was sawing lumber. (11.) A well had been dug by said Bingham, which was giving him trouble in not furnishing a sufficient supply of water; and he told Bingham that, if he had let him know, he could have shown him a place near by, on said hundred acres of land, where he could have got water, without much trouble. (12.) Witness made no objection to the digging of the well

[Heflin v. Bingham.]

on said land, or the erecting of the mill and stable thereon. (13.) On or about the 21st March, 1873, witness sold said two hundred and forty acres of land to plaintiff; one hundred and forty acres at eight dollars per acre, and said one hundred acres at three dollars per acre. (14.) At the time of said sale, witness told plaintiff that he had sold the pine trees on said hundred acres, of proper size and suitable quality to be sawed into lumber, to the defendants, at five dollars per acre, and would charge him three dollars per acre for the land, which would make it about right; and he requested plaintiff, who is a lawyer, to let the deed show this reservation to the defendants. (15.) Nothing was said as to the time the defendants were to remove the trees. The deed to plaintiff was prepared by plaintiff himself, and was executed by witness and his wife.

"The defendants offered each portion of the foregoing testimony, in connection with the whole of the testimony offered by them. To each separate paragraph of said evidence, as the same is numbered, from one to fifteen, inclusive, the defendants objected separately, because the same is illegal and irrelevant; but the court overruled each of said objections separately, and allowed the evidence to go to the jury; and plaintiffs excepted separately thereto."

Henry C. Bingham, one of the defendants, was also examined as a witness for them; and numerous exceptions were reserved by the plaintiff to his testimony, which were stated and numbered as above. His testimony was substantially the same as said Cook's, with the following additions: "(7.) Having other timber close to and around his mill and factory, witness did not begin to cut or remove the trees on said hundred acres of land, until some time in October, or November, 1872, when he purchased a portable engine, and commenced digging a well for his engine, on what he then supposed was a part of said land. (8.) Before he had completed the well, he was informed by said Cook that the well was on the land of one McAfee. (9.) On receiving this information, and being warned by said McAfee not to place his mill at said well, witness then dug a well on said hundred acres, and put his mill in operation thereon, and erected stables for stock; and (10) he was engaged in sawing said pine trees into lumber, when said mill was burned down, about the month of December, 1872." That Cook came on the land where he had erected his buildings and dug his well, and made no objection to his doing so, and told him he could have shown him a better place to get water. "(15.) Defendants set about repairing the burnt mill, but had not done so when plaintiff purchased said lands from Cook. (16.) Plain-

tiff knew, when he purchased the land, that the mill had been erected on the land, and that the stables and fodder-house were on it, and also the remains of the burnt mill. (17.) Some time in the early part of 1873, after plaintiff's said purchase, defendants were about re-erecting their mill on said land; but being informed that plaintiff objected to the mill being put on the land, they purchased a small piece of land from said McAfee, and there erected their mill, where it still stands. (18.) Since erecting their mill at said place, defendants have been engaged in cutting trees on said hundred acres, and sawing them up at said mill. (19.) For some time past, they have been cutting and sawing rapidly. (20.) About one-tenth of the trees still remained uncut on said land. (21.) If the supply of water held out, they would cut the remainder by next July, or August. (22.) In the year 1875, an accident had happened to the mill, damaging it very much; and they were compelled to send a portion of it to Ohio, to have the injured parts duplicated. (23.) During last year, the demand for lumber had been very limited in this section of the country. (24.) At the time of plaintiff's said purchase, the stable and fodder-house were on said land; but they have since been removed to other lands. (25.) At the commencement of this suit, and since, there was some straw in the fodder-house, which had been put there by defendants; and a person who had taken a contract to cut saw-logs for defendants, had put his oxen in one of the buildings on the land, by defendants' permission." To each portion of this evidence objections were made by the plaintiff, and exceptions reserved to its admission, which are stated like the former exceptions.

"This was all the evidence, and all that the evidence tended to prove; and the court thereupon charged the jury as follows: 1. 'That Cook's deed to plaintiff invested plaintiff with the legal title to the land in controversy, subject to whatever rights defendants acquired under their contract with said Cook: that if they are reasonably satisfied, from the evidence, that Cook had, before the sale of the land to plaintiff, sold the pine trees growing on one hundred acres of the land, suitable to be converted into lumber, and the agreed price had been paid to him by defendants, in cash, at the time of the sale; and that defendants were upon said land at the time of the sale by Cook to plaintiff, cutting and using said trees under their contract; then the reservation in Cook's deed, and the use and occupancy of said land by defendants for the purpose of cutting said trees and converting them into lumber, was notice to plaintiff of the extent of defendants' rights under their said contract with Cook; and

if it was a part of the contract and agreement between Cook and defendants, at the time of the sale of the growing trees, that the defendants were to have the right to erect a saw-mill on the land, and to use and occupy the land, for the purpose of cutting and converting the timber purchased into lumber, defendants would have the right to erect a saw-mill on the land, and to use and occupy the same for the purpose of converting said trees into lumber; otherwise, defendants would not have the right to erect a saw-mill oh the land, but would only have the right to go on the said lands for the purpose of cutting and removing said trees. If the evidence fails to satisfy the jury that it was the understanding and agreement between said Cook and defendants, at the time of the purchase of the timber, that defendants were to have the right to erect a mill on the land in controversy, then the jury will inquire, whether defendants' mill, or any part thereof, is on the land in controversy; and if so, plaintiff is entitled to recover. But, if defendants have done nothing more on said land, in cutting, removing, and converting into lumber the timber purchased by them from said Cook, than they were authorized to do under their contract, and were not otherwise in possession of any of said land, plaintiff is not entitled to recover.' To this charge plaintiff excepted.

"The court charged the jury, also: 2. 'If no time was agreed upon between Cook and defendants, for defendants to cut and remove the trees purchased by them, the law will allow them a reasonable time to do so. If a reasonable time has elapsed since the sale of the trees, for the defendants to cut and remove the said trees, before the commencement of this suit, then plaintiff is entitled to recover. Whether defendants have had a reasonable time, is a question of fact for the jury; and in determining this question, the jury will look to all the evidence in the case, the surroundings of the parties, and the probable demand in market for lumber and materials for building, into which the lumber was to be converted; and if a reasonable time had not elapsed, before the commencement of this suit, for defendants to cut and remove the trees purchased by them, and they were not otherwise in possession of any part of said land at the commencement of this suit, than for the purpose of cutting and removing said timber trees under their said contract with Cook, then the plaintiff can not recover.' To this charge, also, the plaintiff excepted."

The plaintiff then requested several charges, which were in writing, and some of which the court gave; but the following (with others) was refused: "3. A license, created by parol, to enter the land and remove the pine trees growing

[Heflin v. Bingham.]

thereon, does not confer on the defendants the right to erect and run a mill on the land, or to use any portion of the land as a mill-yard, or to erect a stable and crib on the land, and use the stable or crib to keep work oxen and food for them therein; and if the defendants, at the commencement of this suit, and previous thereto, were using the land for any or either of such purposes, such possession and use is without authority of law, and the jury should find for the plaintiff." To the refusal of this charge the plaintiff excepted; and he now assigns as error the charges given, the refusal of the several charges asked, the rulings of the court on the evidence, to which exceptions were, reserved, and the overruling of his demurrer to the second plea.

L. E. Parsons, for appellant, cited *Childress v. Monette*, at the last term; *Mitchell v. Robertson*, 15 Ala. 412; *Nickles v. Haskins*, 15 Ala. 619; *Sellers & Cook v. Hayes*, 17 Ala. 749; *Trammell v. Simmons*, 17 Ala. 411; *Collins v. Robinson*, 33 Ala. 91; *Riddle v. Brown*, 20 Ala. 412; *Pease v. Gibson*, 6 Greenl. 81; *Hoit v. Stratton Mills*, 54 N. H. 109; Rev. Code, § 1862.

STONE, J.—Growing trees are part of the realty, and a sale of them, without a compliance with the terms of the statute of frauds, does not pass the title.—*Mitchell v. Billingslea*, 17 Ala. 393; 3 Kent's Com. 438, n. *a*; *Ib.* 401; Rev. Code, § 1862, subd. 6; *Riddle v. Brown*, 20 Ala. 412.

In actions of ejectment, when the plaintiff makes out a *prima facie* case for recovery, the defendant must show a paramount legal title, or right to the possession, or he can not prevent a recovery.— *You v. Flinn*, 34 Ala. 415; *Childress v. Monette*, at the last term; *Mitchell v. Robertson*, 15 Ala. 412; 1 Brick. Dig. 627, §§ 34, 35, 40.

The deed under which plaintiff sought to recover in this action, did not convey the entire property from Cook, the original owner. It declares, on its face, that "this conveyance is made with the following reservation and exception as to the part of said land hereafter specified, which is as follows: The pine trees, of proper size and suitable quality to be sawed into lumber, that are now growing and standing on one hundred acres of said land, are excepted and reserved from this conveyance" The deed then describes the one hundred acres of said land, in which this right was reserved. The real *contestatio litis* in this case arises out of an alleged abuse of the timber right above expressed. Cook, the vendor, before he sold and conveyed to Heflin, had, by oral contract, sold said timber to Bingham, received the purchase-

money, and, the bill of exceptions alleges, put him in possession. Such contract is not void under our statute of frauds, but it conveys no title.

What was the nature of the possession Bingham could receive and hold under the oral contract as described? Evidently, not the ordinary actual accupation, as absolute owner of the fee. It was but a right to enter and remove the timber, doing no damage, and committing no trespass, beyond what were necessary to accomplish this end.— *Riddle v. Brown, supra ; Pease v. Gibson*, 6 Greenl. 81 ; *Hoit v. Stratton Mills*, 54 N. H. 109. It would confer no right to erect or occupy any buildings, or other structures thereon. Cook, under the reservations in his deed, had no such right.

But the trees described in the reservation in the deed were not conveyed to Heflin. These remained the property of Cook, subject to the right and interest he had sold to Bingham. As against Heflin, Cook retained and held the right to enter upon the lands, and, doing no unnecessary damage, to cut and remove the reserved timber therefrom. Heflin could not complain of the exercise of this right, for he had purchased subject to it. Cook, then, having the right to enter and remove the timber, he could sell and convey it, or give a parol license to another, who himself could exercise it, within the limits above expressed, so long as Cook did not interfere, or revoke the license. Such license is the act of Cook, disposing of his own interests and property—not of Heflin.—See *Riddle v. Brown, supra.*

But, in the absence of a time, expressed in the conveyance, within which this right of entry and removal may be exercised, it must be done within a reasonoble time.—See *Hoit v. Stratton Mills, supra.* What is a reasonable time, is necessarily dependent on the nature of the service, and is generally a question of fact. It is so in the present case. Still, there are certain rules not to be lost sight of. The use for which the timber is known to be wanted ; the custom and rule, if such there be, of felling and removing the timber, as the capacity of the mill may require it, if kept reasonably employed, are among the inquiries which should be made in determining the question of reasonable time. The accident of a failing market, or undue delay in rebuilding the mill after its destruction ; these, and similar disturbances, should exert no influence with the jury. But, when the mill was destroyed by fire, a reasonable time was allowed for its reconstruction.

If the owner of such an interest as was reserved by Cook in this case, delay unreasonably to avail himself of it, the right becomes forfeited ; and neither he, nor another under

him, can assert it, without rendering himself liable for a trespass *quare clausum fregit;* but, in such case, it is said the value of the trees constitutes no part of the damages.—*Hoit v. Stratton Mills, supra.*

Under the rules declared above, the Circuit Court erred in the first and second charges given, and in the refusal to give the third charge asked. The second plea is imperfect, in failing to aver the diligence with which defendant was removing the timber. It should have averred that he entered upon the service within a reasonable time, and that he was prosecuting the work of cutting and removing the timber with all due diligence, &c. The demurrer to this plea, in its present form, ought to have been sustained. What we have said will be a sufficient guide for another trial.

Reversed and remanded.