STATE, EX REL. JAMES L. CALDWELL, APPELLANT, V.
CITIZENS STREET RAILWAY COMPANY, APPELLEE.

FILED DECEMBER 18, 1907. No. 15,256.

1. Street Railways: USE OF STREETS. Where the electors of a city are
    invested with the power of extending to a street car company
    the right or privilege of entering on the streets of the city, an
    irregular exercise of such power will not, under all circumstances,
    be held void. Where the company, under the belief that it is
    authorized so to do under the vote of the electors, expends money
    in the construction of its line, considerations of public policy
    may require the court to protect it in the possession and use
    of its road so far as constructed and in operation, when its right
    to the use of the streets of the city is brought in question.

2. ———: ———: LICENSE: ASSIGNMENT. The right of a street car
    company to occupy the streets of a city with a line of street
    railway, granted by a vote of the electors, is, if nothing more,
    a license coupled with an interest, and such license is
    transferable.

3. Cities: SALE OF PROPERTY. A city of the class of the city of Lincoln
    may sell property acquired at a tax sale without first obtaining
    the approval of the electors of the city.

APPEAL from the district court for Lancaster county:
EDWARD P. HOLMES, JUDGE. *Reversed with directions.*

*Flansburg & Williams* and *J. M. Stewart,* for appellant.

*Hall, Woods & Pound* and *Hainer & Smith, contra.*

DUFFIE, C.

From the information filed by the state in this case the
following facts appear: Three street railway companies,
known as the "Capitol Heights Street Railway Company,"
the "Lincoln Rapid Transit Street Railway Company,"
and the "North Lincoln Street Railway Company," were
duly organized under the laws of this state, and in the
year 1887 ordinances were passed by the city council of
the city of Lincoln calling elections for the purpose of

obtaining the consent of the electors of the city to the construction of lines of street railway in and over the streets of said city. So far as appears, neither the ordinances passed by the council nor the notices of the election gave any proposed termini of the lines proposed to be constructed or the route of any of said lines, but the ordinances and the notices described all the streets of the city as the streets upon which it was proposed to construct the several lines of street railway. At the several elections held, a majority vote was cast in favor of the proposition submitted, and certificates were duly issued to the said companies authorizing them to proceed and construct their several lines. The Capitol Heights Street Railway Company constructed and operated a line on Twelfth street from O street to N, from Twelfth to Eighteenth on N, from N to G on Eighteenth, on G from Eighteenth to Twenty-First, then north on Twenty-First to Randolph, and east on Randolph to Fortieth street. The North Lincoln Street Railway Company constructed and operated lines from Thirteenth and N streets, running north to T, west on T to Eleventh, north on Eleventh to Y, east on Y to Twelfth, and north on Twelfth to the city limits. The Capitol Heights Street Railway Company, some·time in 1892, amended its articles, and the name of said corporation was changed to the Home Street Railway Company and was thereafter known by that name. After the building and construction of the above mentioned lines by the Lincoln Rapid Transit Railway Company and the North Lincoln Street Railway Company, the Home Street Railway Company, about the year 1892, purchased the physical property and right of way of said two companies, and by said purchase these roads became merged in the Home Street Railway Company of Lincoln, Nebraska. These lines continued to be operated by the Home Street Railway Company up to the year 1893, and during that time a large amount of general and special taxes were assessed against the property. In October, 1893, a suit was brought in the circuit court of the United States for the district of Nebraska by

the Fidelity Loan & Trust Company of Sioux City, Iowa, and a receiver was appointed to take charge of the property of the company, and afterwards the city of Lincoln, by leave of court, intervened in said action, and filed a cross-petition setting up its lien for taxes upon the property of the defendant company.   Such proceedings were had in that case that in May, 1899, a decree was entered on the cross-bill filed by the city, in which it was found that franchises had been granted to the Lincoln Rapid Transit Street Railway Company, the North Lincoln Street Railway Company, and the Capitol Heights Street Railway Company, and that about July 1, 1893, the defendant the Home Street Railway Company, by purchase and conveyance, became the owner of all the properties, rights and franchises of said above named companies; that the taxes and special assessments were valid liens upon all the property, rights and franchises of said corporation; and it was ordered that said Home Street Railway Company pay or cause to be paid the sum of $46,015.68, the amount of said taxes with interest thereon, within 20 days, and in default of such payment the properties and rights of defendant the Home Street Railway Company be sold to satisfy the decree.   September 6, 1899, the property was sold and bid in by the city of Lincoln for the purpose of protecting its lien.   The sale was confirmed, and in 1906 a second sale was held, and the franchise of said Home Street Railway Company was sold and bid in by the defendant the Citizens Street Railway Company, which in the meantime, and at some date in 1906, had been organized for the purpose of constructing, maintaining and operating a street railway in the city of Lincoln, Nebraska.   Previous to the sale last mentioned the Citizens Street Railway Company had purchased from the city of Lincoln the physical property purchased by the city under the decree of the circuit court of the United States, and it has since reconstructed the lines theretofore operated by the Home Street Railway Company, and now, as we understand, claims the right to extend its lines into any or all the streets of the city.   After

the appointment of a receiver for the Home Street Railway Company in 1893 none of the lines of that company were operated, and one claim of the state is that, because such lines were not operated from 1893 until 1906 when the defendant company went into possession, the Home Street Railway Company had forfeited its franchise. A demurrer to this information was interposed by the defendant company and sustained by the district court. The state not desiring to amend its information, judgment was entered dismissing the case, and the state has taken an appeal to this court.

Many of the questions raised by the record have been discussed and disposed of in *State v. Lincoln Street R. Co., ante,* p. 333. Under the holding in that case, it is evident that no valid consent to enter upon the streets of the city of Lincoln was ever obtained from the electors by the several companies which afterwards became merged in the Home Street Railway Company. Neither the ordinance calling an election nor notice of the election mentioned any termini of the lines or the route of the proposed roads. The consent given was what we have heretofore termed a "blanket consent," which is of no avail when questioned by proper authority. It cannot be questioned, however, that, under our constitution and the statute relating to the formation of street railway companies, the electors of the city of Lincoln had the power to confer on such companies the right to construct and operate a street railway within the corporate limits of the city. In the exercise of this power the termini of the road and the route to be taken between such termini should be set forth in the proposition voted on. When this is done, the line of road is fixed and definite, and the right to construct this line is vested in the company and is beyond recall, as everything necessary to a valid and complete exercise of the power has been done. While the statute must be followed in all esssential particulars in order that the consent of the electors to. the occupation of the streets of the city by a railway company shall be valid and beyond recall, it does

not follow that an irregular exercise of the power possessed by the electors is absolutely void and wholly without force. The manner in which the question of the consent of the electors of the city was submitted was clearly irregular, and the affirmative vote cast thereon just as clearly conferred no power upon the railway companies to use the streets of the city beyond the time when that right should be questioned by some proper authority. But we are not prepared to say that, where the companies acted in good faith and expended their money in the construction of lines under a supposed right to occupy the streets, and this right was not questioned until the bringing of the present action, they or those claiming under them should be ousted from the possession of such streets as are now occupied by their lines, and their property rendered worthless. Under the circumstances of this case, we do not think it would be a wholesome public policy to hold that, because of the irregularity which occurred in granting the right which the people had power to confer, such irregularity renders all proceedings under the vote void and of no effect.

Regarding the claim of an abandonment of its franchise by nonuser, the authorities are clear that, to warrant a court in basing a decree upon that ground, the abandonment must be a clear, unequivocal and decisive act of the party showing a determination not to use or claim the benefit of its franchise. *Citizens Street R. Co. v. City of Memphis*, 53 Fed. 715.

It is also claimed by the state that the city of Lincoln did not acquire the franchise or consent of the electors held by the Home Street Railway Company by the foreclosure and sale in the federal court. We think the rule quite well established that a franchise to be a corporation is separate and distinct from a franchise as a corporation to maintain and operate a railway. The latter may be mortgaged without the former and passes to a purchaser at a foreclosure sale. *Morgan v. Louisiana*, 93 U. S. 217. The consent of the electors to the occupation of the streets of

the city, if a mere license, was a license coupled with an interest, and such licenses, it is well settled, are assignable. *Sawyer v. Wilson,* 61 Me. 529; *Wiseman v. Eastman,* 21 Wash. 163; *Heflin v. Bingham,* 56 Ala. 566.

It is further claimed that the city of Lincoln had no authority to sell and convey to the defendant the property of the Home Street Railway Company which it had purchased at foreclosure sale. This objection is fully met by the provisions of subdivision IV, sec. 9, art. I, ch. 13, Comp. St. 1905, defining the powers of a city of the class of the city of Lincoln. It reads as follows: "To sell and convey real or personal property owned by the city, and make such orders respecting the same as shall be deemed conducive to the interests of the city; but shall not have power to sell any real estate of the city, except such real estate as may be purchased upon sale for general or special taxes or assessments, unless authorized so to do by a vote of the majority of the electors of such city at a general or special election therefor."

Upon the record before us, we are of opinion that the Citizens Street Railway Company is entitled to the use of the streets now occupied by it for street railway purposes so far as its lines are completed and in operation, that it has no right to extend its lines without further authority from the electors of the city, that the decree of the district court should be reversed and the cause remanded, with directions to enter a decree in conformity with the views herein expressed.

Epperson and Good, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the cause remanded, with directions to enter a decree in conformity with the views above expressed.

Reversed.