# Christopher, *et al. v.* Curtis-Attalla Lumber Company.

## *Ejectment.*

(Decided January 16, 1912.   57 South. 837.)

1. *Vendor and Purchaser; Bona Fide Purchaser; Constructive Notice.*—The possession of real estate by a purchaser under an unrecorded deed is constructive notice only when its possession is open, notorious and exclusive, and possession jointly with the vendor is not such notice.

2. *Same.*—A prior possession, which has been terminated before the acquisition by a second purchaser of his rights, is not constructive notice to the second purchaser, though such prior possession, when actually known to the second purchaser may show actual notice to the antecedent claimant, in connection with other evidence.

3. *Same.*—A purchaser of land from a vendor in possession, is not chargeable with constructive notice of the rights of a third person who had previously purchased from the vendor the standing timber on the land, but had never been put in possession, and had merely cut and hauled away timber at intervals.

[Christopher, et al. v. Curtis-Attalla ,Lumber Company.]

4. *Same; Actual Notice.*—A purchaser of land in possession of the vendor with notice of the cutting and removal of timber thereon by a third person does not have notice that the cutting and removal is under a contract of purchase of the standing timber, unless the facts reasonably impress the mind of a reasonable man that the cutting and removal by the third person was as owner and not merely by permission of the vendor.

5. *Same; Notice; Evidence.*—Where the issue was whether the defendant had notice of the sale of the timber, the action being ejectment by a purchaser of standing timber against a subsequent purchaser of the land from the vendor in possession, evidence of plaintiff's entry on the land and cutting timber therefrom during three months before the sale to defendant was not admissible in the absence of evidence of defendant's knowledge thereof.

6. *Same.*—As against a prior purchaser of the standing timber a purchaser of the land was entitled to show that the land including the timber was not worth more than the price paid in order to show his good faith in the purchase of the lands with the timber.

7. *Logs and Logging; Sale of Timber.*—Without more a sale of standing timber passes no interest in the soil generally, and confers no right of possession exclusive of the general owner's possession, and until such purchaser entered on the land and severs the timber, the actual possession of the timber remains in the general owner.

8. *Ejectment; Notice; Instruction.*—An instruction on the issue of constructive notice must qualify the word notice by referring to it as constructive notice.

9. *Evidence; Conclusion of Witness.*—Where the land was in the possession of the vendor, a statement by a witness that he as agent of the purchaser of standing timber was in possession of the timber, though not in possession of the land, was a mere conclusion.

10. *Appeal and Error; Harmless Error; Instruction.*—Where the instructions are conflicting, and on appeal, the court cannot know which of the instructions the jury followed, the erroneous contradiction amounts to prejudicial error.

(Mayfield, J., dissents in part.)

APPEAL from Etowah Circuit Court.

Heard before Hon. JOHN W. INZER.

Ejectment by the Curtis-Attalla Lumber Company agaist Obal Christopher, revived after his death against G. E. Christopher and others, as his heirs. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

The facts sufficiently appear from the opinion. The oral charge is set out in the opinion also.

The following charges were requested by the defendant: (4) "The court charges the jury that a possession of land which does not exclude the owner is not such a possession as will constitute notice." (5) "The court charges the jury that, if the Curtis-Attalla Lumber Company and McDaniel were in possession of the land and timber jointly when Capt. Elliott bought, such possession would constitute no notice of the Curtis-Attalla Lumber Company's right in the premises, and the verdict of the jury must be for the defendant, if the case is otherwise made out by the defendant." (7) "The possession of growing timber on land, without any other interest in the land except the timber, whilst the owner of the land is in possession of the land on which the timber is growing, will never constitute notice of the rights of the person in possession of such growing timber." (9) "The court charges the jury that a possession of land which does not exclude the owner from possession is not such a possession as will constitute notice." (11) "The court charges the jury that the possession of the Curtis-Attalla Lumber Company, under the evidence in this case, does not constitute notice of its right." (12) "The court charges the jury that if McDaniel and the Curtis-Attalla Lumber Company were in possession of the timber jointly, and Capt. Elliott bought, such possession would constitute no notice of the Curtis-Attalla Lumber Company's rights in the premises, and the verdict of the jury must be for the defendant, if the case is otherwise made out by the defendant." (13) "If the jury are reasonably satisfied from the evidence that McDaniel was in possession of the lands in question, on which the timber sued for was growing, the law says he was in possession of said timber, and the fact, if it be a fact, that the Curtis-Attalla Lumber Company was also in possession of said tim-

ber, without more, would constitute no notice of the Attalla Lumber Company's right." (14) Same as 12. (15) Same as 12. (16) "If McDaniel was in possession of the land conveyed to the defendant at the time of said sale, then the defendant is chargeable with no notice of plaintiff's claim by the cutting of the timber by plaintiff, unless defendant knew of said cutting." (17) "The court charges the jury that the possession, in order to give notice, must be exclusive—that is, the vendor must be out of possession, and his vendee in the exclusive possession; and if they are reasonably satisfied from the evidence that defendant bought the land without actual notice of plaintiff's claim, then their verdict must be for the defendant in this case, provided they are also reasonably satisfied from the evidence that Mc-Daniel was in possession of the land at the time of said sale." (18) "The court charges the jury that if Mc-Daniel and plaintiff were in the joint possession of the timber on the land in this case, such possession by plaintiff would not give notice of plaintiff's claim, and, unless defendant had actual notice of plaintiff's claim, then their verdict must be for the defendant."

At the request of the plaintiff the court gave the following charges: (1) "The court charges the jury that if, at the time of the purchase by Christopher, the plaintiff was in actual, open, and notorious possession of the timber described in the deed from McDaniel to Lewin, and this possession was exclusive and under claim of title, then, if the facts and circumstances were such that Elliott or Christopher either knew, or by the exercise of reasonable diligence could have known, of such possession, the verdict of the jury should be for the defendant." (2) "The court charges the jury that the possession of the vendee under an unrecorded deed, who is in the open, notorious, and exclusive possession

and occupancy of real estate, claiming it as his own, is constructive notice of the vendee's title, and is as effective for the purpose of notice as though the deed had been duly recorded." (3) "The court charges the jury that the law charges the purchaser of land with notice of the possession of any part of such realty as may be in the actual, open, notorious, and exclusive possession of another claiming it as his own."

DORTCH, MARTIN & ALLEN, for appellant. Anything falling short of disseizin certainly would not constitute possession.—15 Am. Dec. 198. As to the rights conferred by the timber deed under which appellee claims see *Heflin v. Bingham,* 56 Ala. 566. The cutting and removing of timber occasionally is but equivocal possession and certainly not exclusive.—*O'Neal v. Prestwood,* 153 Ala. 443; *Mann v. Archey,* 110 Ala. 628; *Wells v. A. M. Co.,* 109 Ala. 430; *McCarty v. Nicrosi,* 72 Ala. 332. Declaration of an agent as to the act then being done are admissible as parts of the res gestae.—*Mobile L. Co. v. Baker,* 48 South. 119. Such a declaration was a declaration of a party in possession as to his ownership.—*Larkin v. Baty,* 111 Ala. 303; *Holman v. Clark,* 148 Ala. 291. The appellant must not only have been a purchaser without notice but a bona fide one as well, and hence, the evidence on that particular matter was relevant.—*Hickey v. McDonald Bros.,* 48 South. 1031; 1 Wig. 392; *Larkinsville M. Co. v. Flippo,* 130 Ala. 361. On these authorities it must be held that the court erred in its oral instructions to the jury, as well as in the charges given and refused. Where charges are contradictory in terms, prejudicial error will be presumed as the court cannot know which one of the theories the jury adopted.—*A. C. G. & A. v. Bullard,* 47 South. 578. Possession which does not exclude the

owner is not such a possession as will constitute no-tice.—Authorities supra, and *So. C. & F. Co. v. Jennings,* 137 Ala. 247.

GOODHUE & BLACKWOOD, for appellee. No brief reached the Reporter.

SOMERVILLE, J.—The appellee sued the appellant in ejectment to recover possession of all of the timber of a certain size growing on certain lands. These lands were originally owned by one J. A. McDaniel, who sold the timber in question to one A. M. Lewin on February 28, 1903. Lewin's deed was not recorded until April 10, 1909. Lewin in turn sold and conveyed the timber to the Curtis-Attalla Lumber Company (plaintiff and appellee) on September 28, 1903, by deed recorded on October 17, 1903. On October 15, 1904, McDaniel sold and conveyed the lands of which this timber formed a part, by general description and without exception or reservation, to Obal Christopher, the defendant in eject-ment, by deed recorded on November 1, 1904. McDan-iel was continuously in possession of the land until Oc-tober 15, 1904, when he delivered the possession to the purchaser, Christopher. The material and controlling issue in the case was whether the purchaser, Christo-pher, had, at the time of his purchase, actual or con-structive notice of the rights of the plaintiff Lumber Company under their unrecorded deed. Upon this issue the evidence, though strongly preponderant in favor of the defendant, was in sharp conflict, and the jury found the issue in favor of the plaintiff. The assignments of error relate to rulings on the admission of testimony, and to instructions given and refused by the trial court.

The case of *McCarty v. Nicrosi,* 72 Ala. 332, 47 Am. Rep. 418, often approved and followed by the later

cases, settles the following principles: (1) The possession of real estate by a vendee under an unrecorded deed operates as constructive notice of his rights only when his possession is open, notorious, and exclusive. (2) Such vendee's possession jointly with his vendor is not such notice.

An important qualification of the rule is that a prior possession, which has terminated before the second purchaser's rights are acquired, cannot operate as constructive notice to him.—2 Pom. Eq. Jur. § 662, cited and approved in *O'Neal v. Prestwood,* 153 Ala. 443, 449, 45 South. 251. Of course, however, such a possession, actually known to the second purchaser, may, especially in connection with other evidence, tend to show actual knowledge of the antecedent claim—a question quite distinct from that of the constructive notice resulting from contemporaneous possession, the effect of which does not depend upon actual knowledge of it.

A sale of growing timber may pass the legal title to the purchaser; but, without more, it passes no interest in the soil generally, and confers no right of possession that can be exclusive of the general owner's possession. The right to take possession of such timber can be executed only by entering upon the land and severing it from the soil; and until this is done the actual possession of the timber, undelivered as yet, remains in the general owner in possession of the land, as the quasi bailee of the owner of the timber. This, it seems to us, belongs to the category of self-evident truths, which need no demonstration.—See *Heflin v. Bingham,* 56 Ala. 566, 28 Am. Rep. 776.

It results from this that the principle of constructive notice to the defendant, through the plaintiff's alleged possession of the timber while still standing on McDaniel's land, cannot be applied to the facts of the

present case; the only legitimate issue being as to actual notice on the part of Christopher, or his purchasing agent, of the rights of the claimant of the timber.

The case of *Bolland v. O'Neal,* 81 Minn. 15, 83 N. W. 471, 83 Am. St. Rep. 362, is quite different from the instant case.. There the timber purchaser—to quote from the opinion—"took actual and open possession of about 20 acres of the central portion of the land, along the roads, and scattered buildings all over it. No one could go along that way without being challenged at once by open, notorious, adverse acts of possession. They had commenced to cut the trees down, and were in the act of cutting timber upon the land, when plaintiff purchased." This actual possession, adverse to the general owner, was visibly evidenced by the establishment on the land of a large lumber camp to accommodate a hun· dred men and many horses, including barns, sleeping quarters, cookhouse, storehouse, office, and blacksmith shop. It appears, therefore, that there was an extensive and exclusive possession of the *land* for the patent purpose of removing the timber, as distinguished from a mere occasional entry and cutting as in the present case; and, on such facts, it would seem that the Minnesota court correctly ruled that there was such a possession of the *timber* as imported constructive notice of ownership.

The evidence here shows that McDaniel remained continuously in possession of the land, and that the timber claimant never had possession of any part of the land; his action being confined to merely entering and cutting and hauling away the logs at intervals.

The trial court ex mero motu charged the jury as follows: "The fact, if it be a fact, that Christopher or Elliott, or both of them, knew or had notice that the timber had been cut or was being cut and removed

from the land at or prior to the time of the alleged purchase on the 15th day of October, 1904, would not in this case be notice to Christopher or Elliott that the timber so cut was cut and removed by the plaintiff under a contract of purchase or ownership of the timber. The evidence in this respect must be sufficiently strong to reasonably satisfy you that Christopher or Elliott had such notice of the cutting and removing of the timber as would reasonably impress the mind of a reasonable man that the timber was cut and removed by plaintiff as owner of the timber, and not merely by the permission of or by consent of McDaniel. If defendant knew, or had means of knowing, of the cutting of the timber at or before the time of defendant's purchase, then he would be chargeable with notice of plaintiff's claim. The jury in ascertaining this matter will weigh and consider all the evidence in the case bearing upon the subject so as to ascertain reasonably therefrom what notice, if any, Christopher or Elliott had at the time of the alleged purchase of McDaniel of the timber and ownership thereof by plaintiff. Did Christopher or Elliott know, at the time of their alleged purchase of the land of McDaniel, that the plaintiff owned the timber the subject-matter of the suit, and if you find from all the evidence that defendant or Elliott, at the time of their purchase and payment for the land, knew reasonably of the ownership of the timber being in the plaintiff, then you should find in favor of the plaintiff."

This charge is, we think, a correct statement of the law as applicable to the evidence before the court, with the exception of a single paragraph, as follows: "If defendant knew, or had means of knowing, of the cutting of the timber at or before the time of defendant's purchase, then he would be chargeable with notice of plaintiff's claim." This was a flagrant contradiction

of the first paragraph of the charge, and was an erroneous statement of the law. We cannot know which of these instructions the jury followed, and hence cannot hold that the erroneous contradiction of the first paragraph was not injurious error.—*A. C. G. & A. Ry. Co. v. Ballard,* 157 Ala. 618, 47 South. 578.

Charges 4, 5, 7, 9, 11, 12, 13, 14, 15, 16, 17, and 18, requested for the defendant, correctly state the law of constructive notice as above declared; and in view of some of the evidence, should have been given by the court, except that some of them are deficient in not qualifying the "notice" referred to as "constructive" notice.

Charges 1, 2, and 3, given for the plaintiff, are at least abstractly correct.

Since possession of growing timber, independently of any possession of the land itself, is a legal impossibility, the statement of the witness Smith that plaintiff's agent was in possession of the timber, though not in possession of the land itself, was a mere conclusion, which should have been excluded.

It was error also to allow the plaintiff to prove the fact of its several entries upon the land and its cutting of timber during the months of July, August, and September, 1904, without some evidence of defendant's knowledge thereof. In the latter case, such proof would be competent as tending to show defendant's actual knowledge of plaintiff's claim, in connection with McDaniel's testimony that he had expressly informed defendant of it. For the same reasons it was error to allow plaintiff to prove the quantity of timber cut on those occasions.

The issue involved, in part, the bona fides of the defendant's purchase of the land for a valuable consideration. As bearing upon his good faith, he should have been permitted to show that the property purchased by

him was not worth in excess of the price paid, $6,000. Hence the propriety of the question to defendant's witness Elliott, "Whether or not the $6,000 was not the market value of the property set forth in the McDaniel deed to Christopher, including the timber on the land," in the rejection of which there was error.

For the errors noted above, the judgment will be reversed, and the cause remanded.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting. MAYFIELD, J., concurs in the reversal, but not in all of the opinion.

MAYFIELD, J.—I concur in the reversal and mainly in the opinion in this case; but I think there is a more important question which lies across the doorsill of this inquiry, that is not noticed in the opinion, and seems not to have been noticed by counsel nor by the trial court. This question, however, goes to the jurisdiction, and to the validity of the judgment, and therefore could and should be noticed at any stage of the proceedings, and the question should be considered by the court sua sponte. The question is: Will statutory ejectment lie, in this state, for the character of property sued for and recovered in this action?

The action is the statutory one, in the nature of ejectment. The property sued for and recovered is described in the complaint as follows: "All the saw timber 10 inches and larger at the butt, lying north of dry creek on the tract known as the E. P. Little place, and also all the timber 10 inches and larger at the butt on the northeast quarter of section 3, township 13, range 5 east, all situated in Etowah county, Alabama."

I am of the opinion that such action will not lie in this state, nor in any other state unless expressly authorized by statute; and I do not know of, and never

heard of, any such statute; and by what investigation. I have been able to give to the subject, I have been unable to find any authority, statutory or common law, which will authorize such an action. But for the fact that the learned trial judge, the able counsel in this case, and my learned Brothers, seem to think such an action will lie, I should have no doubt upon the subject. I am, however, of the opinion that they have merely passed the question sub silentio.

The text-writers and the adjudged cases, both English and American, state the law to be that ejectment will not lie for anything upon which an entry cannot be made, or the possession of which, if recovered, the sheriff cannot deliver. The action will therefore lie only for corporeal hereditaments, and not for those which are incorporeal.

It is also said, in the older cases, and copied into some of the texts, that: "A party may have ejectment for right of herbage, pro prima tonsura; that is to say, if a man has a grant of the first grass that grows on the land every year, he may maintain ejectment against him who withholds it from him.—*Ward v. Petifer,* Cro. Car. 362. So, also, ejectment may be had on a demise of the hay-grass and aftermath (*Wheeler v. Toulson,* Hard. 330), on the principle in these cases, that the parties, being entitled to all the profits of the land, are entitled also to the land for the same time, and no one can enter thereon while they are thus entitled without being a trespasser."—Tyler on Ejectment & Adverse Enjoyment, p. 39.

It must be remembered that in ejectment, in its original form, damages only were recoverable; but later the writ of habere facias possessionem was allowed, in conjunction with the damages, and in some jurisdictions the plaintiff might succeed as to damages, but fail as to

possession, and in some jurisdictions counts for damages and counts for possession were allowed to be joined in the same action. But where the action is confined to that of possession of land and the mesne profits for withholding the possession of land, then the subject-matter or the interest in the land must be such as the sheriff can deliver possession of, to the plaintiff, under a writ of restitution.—Sedg. & Wait, Trial of Title to Land, §§ 96, 97.

The test as to when the action will lie is well stated in the above text, as follows:

"Sec. 100. Right of possession essential.—Whatever takes away the right of possession in presenti is fatal, and constitutes a complete defense to the action. The plaintiff must have a right of entry in virtue of or incident to some corporeal estate or interest in the premises, for the right to take actual possession of the land is the question to be tried, and constitutes the foundation of the action, whatever may be the character or source of the claimant's title. Chitty says: 'A party having a right of entry, whether his title be in fee simple, fee tail, in copyhold, for life, or years, may support an action of ejectment.'

"Sec. 101. True test as to when ejectment lies.—'The trust test of this action,' says the New York Supreme Court, 'seems to be that the thing claimed should be a corporeal hereditament, that a right of entry should exist at the time of the commencement of the action, and that the interest be visible and tangible, so that the sheriff may deliver the possession to the plaintiff in execution of the judgment of the court.' Hence rights or interests in land which lie in grant, being invisible and incorporeal, are not, at common law, the subject of this action."

[Christopher, et al. v. Curtis-Attalla Lumber Company.]

If a plaintiff owned all the timber on land, and had the exclusive right of possession for the purpose of cultivating and marketing the timber, then ejectment by him might lie, though as to this there is grave doubt; but where a party merely purchases certain parts of the timber on land, has only a mere license or privilege to go upon the land for the purpose of removing the timber which he has purchased, of course ejectment will not lie. If the sheriff should put him in possession of his timber thus growing upon the land, he would necessarily have to put him in possession of the land, which did not belong to him, and of a possessory right which he did not claim.

That the action in this case will not lie, to my mind, is conclusively shown by the fact that the books show the report of no case wherein such an action has been sustained. If such actions will lie, surely they would have been brought before this one, and some of them would have found their way into the books.

As the books contain no reported cases like this, of course they contain no reason why the action in the specific case will not lie. The cases which have been brought, for minerals, mineral rights, mines, mining rights, for annexations to the soil such as houses, rooms, cellars, fixtures, horizontal divisions of land, vaults, for oil and gas wells, for made lands, land under water, etc., are not analogous to the extent of authorizing this action, though in some respects they are different from the ordinary actions of ejectment, and, in some respects, from this action. The chief difference is that in those actions there is an exclusive right to the possession of the thing recovered, and of the land upon which it is situated, for the use or purpose for which the thing recovered is sued and to be used.

In the case at bar the plaintiff never purchased any interest in the possessory right of the land; he merely purchased certain timber growing upon the land, and while, of course, the purchase and sale is considered or treated as a contract with regard to land, to the extent that it must be in writing and must conform to the statute of frauds, yet the effect of the sale, when consummated, is to sever the timber from the land and to convert it into personalty, and the only interest the purchaser acquires in the land is a muniment or license to go upon the land for the purpose of removing or marketing his timber, which is thereafter a chattel and not realty.

If a man should purchase all the timber and growth upon land, and the exclusive right to grow or cultivate timber thereon for a number of years, then he might have such an interest as would support ejectment; but when, as in this case, he merely purchases a part of the timber of certain dimensions and descriptions, the effect of his contract is to sever the timber so purchased from the land and the other growing timber, and to convert it into a chattel, with a mere license or privilege to go upon the land for the purpose of removing the timber purchased. Of course, ejectment will not lie for a chattel, nor will a mere license or permit to go upon the land for the purpose of removing it support ejectment. This is the only right or title which the plaintiff claims in this action, and it will not, of course, support ejectment.

When the owner of land sells the mineral rights therein, and the right to mine the minerals, this, of course, under the same rule or fiction of law, works a severance of the two estates, but in that case each estate or interest remains and continues to be real estate; while in the case of the sale of certain described timber, the sale,

[Christopher, et al. v. Curtis-Attalla Lumber Company.]

though required to be in writing, converts the timber
or trees sold into a mere chattel, with the privilege or
license to go upon the land for the purpose of remov-
ing it.

It has been suggested that as ejectment at common
law would lie for pasturage, herbage, and pannage, this
is authority to support the action in this case; but this
is not true, for the reasons above mentioned, and the
subject is possibly best treated in Sedgwick & Wait on
Trial of Title to Land, § 143.   The reasoning is' to me so
conclusive that I here set it out:   "Sec. 143.   Pasturage
and herbage.—The early cases, decided in England, with
regard to the right to bring ejectment for pasturage
and herbage, are of little value at the present day. They
seem to have turned chiefly on questions of evidence and
pleading.    These   rights   somewhat   resemble   fishery
rights.   With regard to both, it is clear that they may
exist separate from the interest in the soil.   Lord Coke
says that the grantee of herbagium terræ has a 'particu-
lar right in the land, and shall have an action quare
clausm fregit; but by grant thereof and liverie made,
the soile shall not passe.'   Where the right to the soil
and the herbage are in the same person, the recovery
of the one in ejectment would carry the other with it;
but that the owner of the separate herbage or pasturage
rights would now be permitted to maintain ejectment
may well be doubted.   In an early case in the King's
Bench, often cited, it was held that ejectione firmæ
would lie for the pasturage of 100 sheep; but it does
not appear from the report what the interest of the
plaintiff in the soil was, and the question may have
been only that of the proper description of the subject
of the action; and in a later case in the Exchequer,
where ejectione firmæ was brought upon a demise de
herbagio et pannagio of so many acres, the court stated

as a reason for inclining against the plaintiff, that 'herbage does not include all the profit of the soil, but only a part of it,' referring to the passage from Coke above cited. In *Ward v. Petifer*, and in *Parker v. Staniland*, in the King's Bench, it was said that ejectment would lie for the first crop growing upon the land; but in the second case the remark was entirely obiter, while in the first it was not needed for the actual decision of the question presented to the court, for the jury were told that if they believed that the plaintiffs had *only* the first crop (and not the entire profits through the year), they should return a special verdict to that effect, 'and leave it to the law whether an ejectment lies in this manner.' The case is chiefly remarkable for containing a suggestion, similar to that above noted as having been advanced with regard to fisheries, that the owner of the first crop will be presumed, in the absence of evidence to the contrary, to be the owner of the freehold. These decisions certainly cannot be regarded as sufficient to uphold ejectment for herbage or pasturage, when separated from the general ownership of the soil, and existing as a mere right to the profits of the land. Pannage, or the right to gather mast, which, in the nature of the interest, cannot be distinguished from pasturage or herbage, has been held insufficient to support ejectment. The Supreme Court of Massachusetts has decided that the grantee of the 'herbage or feeding' of land cannot maintain a writ of entry, and this decision, it seems to us, should be regarded as an authority in any state in which the action of ejectment prevails."

I know there is a great variety and contradiction of opinions as to the interest, if any which a purchaser or vendee of standing timber acquires in the land or soil upon which the timber is standing. The oldest cases, or a majority thereof, held that he acquired no title or

[Christopher, et al. v. Curtis-Attalla Lumber Company.]

ownership, therein; that it was a mere chattel sale, with a license or permit to remove it; and that the vendor could revoke the license or muniment at pleasure, until the timber was severed, and in some cases until it was removed from the land. This doctrine, however, in the main, has been abandoned, and the rule is declared to be that such a sale and alienation passes an interest in the land itself, and hence that the contract must be in writing and comply with the statute of frauds, and the conveyance comply with the statutes as to deeds or conveyances of land. But it has never been decided that it passes such title or interest as would support ejectment against the owner of the freehold.

If the contract of sale fixes no time within which the timber must be removed, then the law says it must be removed within a reasonable time. When the contract limits or fixes the time in which the removal shall be made, the great majority, if not the great weight, of authorities, hold that, on the expiration of this time limit, all right, title, interest, claim, and demand of the vendee in or to the timber or land ceases or is determined. .

But some of the courts hold that the title to the timber does not so determine nor revert unless the contract expressly so provides, but only the right to enter upon the land is terminated; that the vendee after the expiration of the time limit still owns the timber, although he has no right to remove it—a paradox of contradictions. It is certainly illogical to hold that the contract and sale passed an interest in land, and that by virtue of the same contract, after the expiration of the time limit fixed by the contract, the vendee still owns the timber, but has lost his interest in the land. If the growing timber, which alone is sold and conveyed, is an interest in the land, when the interest in the land is

[Christopher, et al. v. Curtis-Attalla Lumber Company.]

ended by the very terms of the contract and deed, surely the title to the timber is also terminated, which is the interest in the land and the only interest sold or conveyed.

This court, however, is among the few courts which hold that the vendee still owns the timber, although he has no right to use or remove it.—*Magnetic Ore Co. v. Marbury Lumber Co.*, 104 Ala. 465, 16 South. 632, 27 L. R. A. 434, 53 Am. St. Rep. 73; *C. W. Zimmerman Mfg. Co. v. Daffin*, 149 Ala. 386, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58; *Heflin v. Bingham*, 56 Ala. 566, 28 Am. Rep. 776.

In the case of *Zimmerman v. Daffin*, 149 Ala. 380, 389, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58, this court used the following language: "If the limitation as to the time of cutting and removal should be construed as a covenant on the part of the purchaser that it would cut and remove the timber in the time specified, the title to the timber would remain in the purchaser after the time limit had expired, and he could still enter upon the premises and remove the same at his pleasure, being liable to the vendor for such damages as he should cause in so doing. The vendor would also have a right of action against the vendee for a breach of the covenant in not performing the covenant as agreed; or it may be that the vendor would be entitled to remove the timber after the time limit himself, but not to appropriate it to his own use." Here is where the court went astray in following the Illinois rule, instead of the Michigan rule. The great number and weight of authorities are in line with the Michigan rule, and against the Illinois rule which our court followed.

If the sale of the timber originally was a sale of a chattel merely, as the oldest cases held, with a muni-

ment or license to remove, then the Illinois rule would
be correct and consistent; but if, instead, as all the au-
thorities now hold, it is a sale and conveyance of an
interest in the land itself, when the interest in the land
is terminated and determined by the contract itself,
then the title to the timber ceases and is terminated
for the same reason and by the same contract. It is
self-contradictory to say that the sale of growing trees
is a sale of an interest in land, and that the interest in
the land ceases and is terminated by the contract itself,
and yet that the title to the timber or trees continues
though the interest in the land is terminated by the
same. Both propositions cannot be true; one must be
false. If the sale of the trees was the sale of a chattel,
then the title to them could remain, though the right to
remove had ceased; but if the sale of the trees be not
the sale of a chattel, but the sale of an interest in the
land and soil, and this interest in the land or soil is
terminated by the contract and conveyance, the vendee's
interest in or title to the trees must of necessity lapse
with the expiration of the contract.

This is well pointed out by the annotators, in the
reports of the cases of *McRae v. Stillwell,* 111 Ga. 65,
36 S. E. 604, 55 L. R. A. 513; and *Midyette v. Grubbs,*
145 N. C. 85, 58 S. E. 795, 13 L. R. A. (N. S.) 278; and
*Adkins v. Huff,* 58 W. Va. 645, 52 S. E. 773, 3 L. R. A.
(N. S.) 649, 6 Ann. Cas. 246. The notes to these cases
collect and review the authorities upon the subject, the
conclusion of which is thus well stated by the annota-
tors in　55 L. R. A. at pp. 535, 536: "The title to
standing timber passes at the time of the conveyance,
and the purchaser acquires the right to enter on the
land for the purpose of cutting and removing the tim-
ber, and also an interest in so much of the soil where it
grows as is necessary to sustain and nourish the trees

until they are cut down. He cannot refuse to pay for the trees on the ground that the vendor had no title to the land, if his possession has not been disturbed. A provision as to the size or suitability of the trees conveyed will generally be held to refer to the time of the conveyance, rather than some time in the future, in the absence of anything to show a contrary intent. Where the conveyance specifies a particular time for the removal of the timber, the purchaser has generally been held to have forfeited all rights in timber not removed within the time specified, although a few cases hold that he still retains the title to the timber, but cannot remove the same, as his right of entry has gone. It would seem that the mere cutting of the trees within the time specified without their removal from the land is insufficient to preserve the purchaser's rights in the timber; but the manufacture of them into timber has been held a sufficient removal of them, although such timber still remains on the land."

I have examined all the authorities I can find upon the subject, and I think the conclusion of the annotator is not only supported by the great number and weight of authorities, but, as before stated, by reason and the very nature of things.

But as before stated, none of the reported cases hold that the vendee acquires any such interest or title as will authorize him to maintain ejectment against the vendee, or the owner of the freehold estate, while he might defend against an action of ejectment brought by the vendor, which was intended to prevent his entering and removing the timber which he had purchased, during the time mentioned in the contract or within a reasonable time if no time limit was fixed by the contract. Such defense seems to be recognized in the case of *Heflin v. Bingham*, 56 Ala. 566, 28 Am. Rep. 776.

But this is quite a different thing from allowing such a defendant to bring ejectment for the timber. Such a defense as was interposed and recognized in that case might be good upon the theory that there was no ouster, and no unlawful entry or withholding, but that all things done were lawful, and therefore would not warrant the defendant's ejection when he was there for a lawful purpose. In other words, that where there has been no ouster ejectment will not lie.

I am not able to find any case in which the owner of the timber has been allowed to recover in ejectment against the owner of the freehold. I concede that he might recover against a bare trespasser.

It is well-settled law in this state that, in order for a plaintiff in common law or statutory ejectment to recover, he must recover upon both "a title and a right of entry existing at the commencement of the suit and continuing to the day of trial."—*Anderson v. Anderson,* 64 Ala. 403.

Applying these principles of law to the case in hand, it seems to me to be settled beyond doubt that plaintiff could not succeed in ejectment. If we conclude that the plaintiff was the absolute owner of the timber sued for, at the commencement of the action, and at the time of the trial, he certainly had no right of entry upon the premises at the time of the trial, and therefore no right of recovery in ejectment. The contract or deed under which he claimed title expressly limited the time of entry for removal to three years from the date of the deed, which was executed February 28, 1903. The trial was not had until April 13, 1909, more than three years after the time of entry had expired by the very terms of the deed, the only source of title by which he claimed. —See deed, Tr., p. 3.

[Christopher, et al. v. Curtis-Attalla Lumber Company.]

This court and all others have held that if the vendor fails to remove the timber within the time limit of the contract, and removes it thereafter, he is a trespasser and is liable to the owner of the freehold as such. It would certainly be an anomaly in law for a court, by its judgments, to order a sheriff or a party to a suit to put a trespasser upon the land of another.

If the plaintiff rightly recovered in this suit, and the judgment in his favor is executed, such will be the effect of the judgment and orders of the court in this case.

There is another insurmountable practical difficulty in the way of the plaintiff's recovery in this action. He claims only "the saw timber measuring 10 inches at the butt." All the authorities agree that such a deed only passes title to or includes such trees as were comprehended in the description at the date of the deed to wit, February 28, 1903. Who could go into a forest 11 years after a given date, and point out with certainty the trees, and those only, that corresponded to the stated measurements at the time in question? The feat would be an impossibility. Again, how far from the ground should the measurement be made? And how is the sheriff to put the plaintiff in possession of the trees purchased without disturbing or interfering with the defendant's undisputed and conceded rights?

An attempt to answer these questions will show that the action will not lie.